[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams*, Slip Opinion No. 2024-Ohio-1433.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1433

THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Williams*, Slip Opinion No. 2024-Ohio-1433.]**

*Criminal law—Juvenile law—Stare decisis—*State v. Burns *reaffirmed based on stare decisis—Under* Burns*, defendant was properly charged with and convicted of tampering with evidence in adult court, because that charge was rooted in the acts for which defendant was bound over from juvenile court—Court of appeals' judgment reversed and cause remanded for consideration of remaining assignments of error.*

(No. 2022-1053—Submitted September 26, 2023—Decided April 18, 2024.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-210384, 2022-Ohio-2022.

_____

**FISCHER, J.**

**{¶ 1}** We accepted this discretionary appeal brought by appellant, the state of Ohio, to determine whether appellee, Timothy Williams, who was a juvenile

when he committed the offense at issue, could be indicted for and convicted of that offense in adult court when a charge for the offense was never considered by the juvenile court. We reaffirm our holding in *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, ¶ 11-13, and hold that a defendant who was a juvenile when he committed an offense may be charged for and convicted of that offense in adult court even though a charge for the offense was not brought in juvenile court and considered in a bindover proceeding, if the charge is rooted in the same acts that were the subject of the juvenile complaint. Consequently, we reverse the judgment of the First District Court of Appeals and remand the matter to that court for it to resolve any remaining assignments of error.

## I. BACKGROUND

{¶ 2} Timothy Williams, then 16 years old, rang the doorbell of the home of Everett and Leslie Lawson, pretending to have been injured in a car accident. Everett saw Williams through a window and called 9-1-1. Leslie heard Williams's cries for help. Worried about the injured young man, Leslie opened the front door. Williams then shot Leslie twice, killing her instantly.

{¶ 3} Williams was charged in the Hamilton County juvenile court as a delinquent child for conduct that if committed by an adult would constitute murder in violation of R.C. 2903.02(A) and (B) and felonious assault in violation of R.C. 2903.11. The charges included firearm specifications under R.C. 2941.141 and 2941.145. The state did not charge Williams in the juvenile-court complaint for conduct that if committed by an adult would constitute tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶ 4} At Williams's hearing on the mandatory bindover of his case to adult court, the state presented testimony of three witnesses to establish probable cause that Williams had committed the charged offenses. The first witness to testify, Grace Jacobs, testified that while she was at Autumn Haugabrook's home in the early-morning hours on the day of the murder, Williams and his codefendant,

2

Kerwin Heard, borrowed her vehicle so they could visit someone on the other side of town. When Williams and Heard returned the vehicle a few hours later, Grace saw that they had a gun. Later that morning, after seeing breaking news that a woman had been murdered, Grace asked Williams and Heard about the murder. Williams told her not to worry, because he "would take the charge."

{¶ 5} Forest Park Police Department Detective Jeff Carnine testified that Everett had told him that a young male wearing a red hoodie had shot Leslie. Police found three spent 9 mm shell casings near the front door where Leslie had been shot. During their investigation, police discovered that around the time of the offenses, Grace's vehicle was spotted by a city license-plate reader about a minute after Williams's cellphone connected with a cellphone tower in the same vicinity, suggesting that Williams's cellphone was in Grace's vehicle when the call was made and corroborating Grace's testimony that Williams and Heard borrowed her vehicle shortly before the offenses occurred. Detective Carnine interviewed Williams, who claimed without provocation that he lost his red hoodie on the night of the murder.

{¶ 6} Vincent Thompson testified that Williams sold him a "dirty" 9 mm gun two days after the murder. Thompson met Williams at Autumn's home to purchase the gun. Thompson also testified that Williams told him that the "gun was hot" because "[Williams had] put in some work with the gun" with Heard.

{¶ 7} The juvenile court found probable cause to believe that Williams committed all the offenses and specifications charged in the juvenile complaint and transferred the case to the Hamilton County Court of Common Pleas (or, "the adult court"). A grand jury then indicted Williams for murder and felonious assault and the accompanying firearm specifications regarding the same acts that had been charged in the juvenile-court complaint. But the grand jury also indicted Williams for tampering with evidence in violation of R.C. 2921.12(A)(1), for Williams's knowingly altering, destroying, concealing, or removing the firearm used in the

murder with the purpose to impair its value or availability as evidence in an investigation or official proceeding. Williams's defense counsel did not object to the tampering-with-evidence charge.

{¶ 8} Williams eventually pleaded guilty to involuntary manslaughter in violation of R.C. 2903.04(A), with a three-year firearm specification, and to tampering with evidence. He was sentenced to an aggregate 17-year prison term. At his plea hearing, Williams agreed with the state's assertion that he had shot and killed Leslie and sold the murder weapon soon thereafter.

{¶ 9} Williams appealed his tampering-with-evidence conviction to the First District, arguing that his statutory and constitutional rights were violated when he was indicted for and convicted of tampering with evidence, because that charge had not been transferred from the juvenile court to the adult court. *See* 2022-Ohio-2022, ¶ 7. While that appeal was pending, this court released its decision in *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297. In *Smith*, we held that "a juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found." *Id*. at ¶ 29.

{¶ 10} The First District, relying on our decision in *Smith*, held that the adult court had lacked subject-matter jurisdiction over the tampering-with-evidence charge because the juvenile court had not found probable cause on that charge. 2022-Ohio-2022 at ¶ 16-17. The appellate court thus vacated Williams's tampering-with-evidence conviction. *Id.* at ¶ 19.

{¶ 11} The state appealed to this court, and we accepted the following proposition of law for review:

> The holding in *Smith* is limited to circumstances where a juvenile court explicitly found there was no probable cause for a charge filed therein.

4

*See* 168 Ohio St.3d 1447, 2022-Ohio-3909, 197 N.E.3d 587.  We sua sponte held the matter for our decision in *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801.  168 Ohio St.3d 1447, 2022-Ohio-3909, 197 N.E.3d 587.  After we decided *Burns*, we ordered briefing.  168 Ohio St.3d 1488, 2022-Ohio-4704, 200 N.E.3d 275.  The case is now ripe for decision.

## II.  LAW AND ANALYSIS

### A.  The mandatory-bindover process

{¶ 12} In Ohio, the juvenile courts have exclusive jurisdiction over cases involving juveniles alleged to have committed acts that would constitute criminal offenses if committed by an adult.  *See* R.C. 2151.23 and 2152.03.  However, a juvenile court relinquishes jurisdiction to the adult court through a mandatory- or discretionary- bindover proceeding when certain requirements are met.  *See* R.C. 2152.12.  For a case involving a defendant who was 16 years old when he allegedly committed murder, the juvenile court is required to "transfer the case" to the adult court if the juvenile court finds that there is probable cause to believe that the juvenile "committed the act charged."  R.C. 2152.12(A)(1)(a)(i).

{¶ 13} In *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, this court was tasked with determining whether the entirety of "the case" in which an act charged was found by the juvenile court to be supported by probable cause or only "the act charged" for which the court found probable cause transfers from the juvenile court to the adult court.  *Id.* at ¶ 24-25.  This court explained that the adult court has jurisdiction "over only the specific act or acts transferred, i.e., those acts supported by probable cause," *id.* at ¶ 32, and recognized that R.C. 2151.23(H) "does not authorize jurisdiction over whatever charges the adult court independently determines should arise from the underlying course of criminal conduct that was the basis for the complaint in the juvenile court," *Smith* at ¶ 34. This court further explained that R.C. 2151.23(H) "gives adult courts flexibility in

*resolving cases* by allowing them to accept a plea to or convict the defendant of an offense that is either a lesser degree of, a lesser included offense of, or an offense different from the offense charged that was rooted in the offense that was the basis of the transfer." (Emphasis added.) *Smith* at ¶ 35. And this court rejected the state's argument that the entire "case," including charges for which the juvenile court found no probable cause, is transferred to adult court upon the juvenile court's finding of probable cause on any count. *Id.* at ¶ 38-39. This court explained that under the state's reading of the statutory scheme, juveniles would not be afforded the protections of the bindover process. *Id.* at ¶ 38. Therefore, this court held that an adult court lacks jurisdiction over acts for which the juvenile court found no probable cause. *Id.* at ¶ 44.

{¶ 14} Soon after *Smith* was decided, this court was "asked to decide whether the state must prove in juvenile court that there is probable cause to believe that a juvenile committed every act charged before the juvenile may be indicted for those acts in adult court," *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 1. This court affirmed its holding in *Smith* that an adult court has no jurisdiction over a charge for which the juvenile court found there was no probable cause. *Burns* at ¶ 10. However, this court clarified in *Burns* that a juvenile may be convicted in adult court of charges that were not presented to the juvenile court but were returned by the grand jury if the charges were "rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Id.* at ¶ 13. This court supported that conclusion with the text of R.C. 2151.23(H), which provides that after the juvenile court has bound a case over to adult court, the adult court "has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court," *Burns* at ¶ 12.

**B. Stare decisis demands that we follow *Burns***

{¶ 15} In this case, the state argues that Ohio's adult courts have jurisdiction over charges first brought in adult court that are "rooted in" acts for which the juvenile court found probable cause. The state argues that Williams's tampering-with-evidence charge is firmly "rooted in" the murder of Leslie and not a different course of conduct or event that was not properly bound over by the juvenile court. The state encourages this court to simply apply *Burns*, arguing that Williams offers no persuasive reason to disregard *Burns*.

{¶ 16} Williams argues that *Burns* was wrongly decided and that we should overrule it and strictly apply *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297. According to Williams, under *Smith*, only charges for which the juvenile court made an explicit finding of probable cause may be bound over to adult court. Williams maintains that *Burns* is not grounded in statutory law or caselaw.

{¶ 17} We reaffirm our decision in *Burns*, based on the principles of stare decisis. "Stare decisis is a cornerstone of our legal system." *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 518, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). It "compels a court to recognize and follow an established legal decision in subsequent cases in which the same question of law is at issue." *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 28. While stare decisis can be applied with varying force, we have described precedent that "involves statutory interpretation * * * as more sacrosanct than the common-law precedents." *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 6, 539 N.E.2d 103 (1989). Precedent that involves statutory interpretation "is owed greater stare decisis effect than other sources of law, because the legislature can always amend a statute in light of a court's construction." *State v. Wilson*, 170 Ohio St.3d 12, 2022-Ohio-3202, 208 N.E.3d 761, ¶ 51 (DeWine, J., dissenting); *see also New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*,

157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 19 (stare decisis applies to statutory interpretation because the legislature can amend a statute if it disagrees with the court's interpretation); *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 33 (lead opinion), quoting *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 23 (" 'stare decisis applies to rulings rendered in regard to specific statutes' "). Because *Burns* used statutory interpretation to conclude that under R.C. 2151.23(H), a juvenile may be convicted in adult court on charges that were not presented to the juvenile court but were returned by the grand jury if the charges were "rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred," 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 13, we are bound to follow that case.

{¶ 18} Additionally, Williams has not presented a compelling reason why we should overrule *Burns*. R.C. 2151.23(H) specifically allows adult courts to consider charges that were not bound over from juvenile court. The statute grants the adult court to which the case is transferred jurisdiction "to *hear and determine* the case in the *same manner* as if the case *originally* had been commenced in that court, * * * including, *but not limited to*," jurisdiction to accept a guilty or no-contest plea or a verdict and to enter a judgment of conviction against the defendant for the "offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged." (Emphasis added.) *Id*. An adult court is plainly not restricted to considering only the offenses for which the juvenile court found probable cause.

{¶ 19} While the "rooted in the acts that were the subject of the juvenile complaint" limitation from *Burns* is not found in the language of R.C. 2151.23(H), that limitation is supported by the bindover scheme as a whole. A person who was

8

a juvenile when he committed a felony offense may be bound over to adult court for acts for which the juvenile court found probable cause, but that bindover does not establish that the juvenile may then be bound over for all future felony charges. *See State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 44-45. While a grand jury may return an indictment on any charges supported by the facts submitted to it, the grand jury is implicitly precluded from returning additional charges arising from a different course of conduct or an event that has not been properly bound over by the juvenile court. *See Burns* at ¶ 13; *see also State v. Weaver*, 6th Dist. Lucas No. L-18-1078, 2019-Ohio-2477, ¶ 14. Only charges that are rooted in events that were considered and bound over by the juvenile court are subject to being heard and determined by the adult court. Thus, we conclude that even though our "rooted in" language in *Burns* does not track the language of R.C. 2151.23(H), that alone does not provide sufficient cause for us to overrule *Burns*.

{¶ 20} Moreover, since this court decided *Burns*, the General Assembly has amended the statutes providing for discretionary and mandatory bindovers to adult court. *See* 2022 Am.Sub.S.B. No. 288 ("S.B. 288"), effective April 4, 2023. Those amendments do not affect the bindover in this case, which predated the amendments under S.B. 288, but they support the conclusion that we need not overrule *Burns*. Any further conclusions we make regarding pre-April 4, 2023 bindover proceedings will apply to a shrinking number of cases and could create unnecessary competing approaches to considering pre- and post-April 4, 2023 bindovers. The General Assembly effectively codified our decision in *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and it did not amend the language in R.C. 2151.23(H) that supports our decision in *Burns*.

{¶ 21} For these reasons, stare decisis demands that we apply *Burns* in this case.

**C. The tampering-with-evidence charge is rooted in acts that the juvenile court bound over to the adult court**

{¶ 22} In this case, we must determine whether the tampering-with-evidence charge is rooted in the acts that resulted in the juvenile court's finding of probable cause for the offenses of murder and felonious assault and the firearm specifications.  We find that it is.

{¶ 23} "[A] case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred."  *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 13.  This includes new indicted charges that arise from a course of conduct or an event that has been properly bound over by the juvenile court.  *Id.*  In *Burns*, we determined that certain indicted charges that were not in the juvenile-court complaint were rooted in the acts that were bound over by the juvenile court because the indicted charges were based on conduct that was in the juvenile complaint.  *Id.*

{¶ 24} The juvenile complaint against Williams focuses on the murder and felonious-assault charges, alleging that Williams shot Leslie with a 9 mm handgun.  The complaint does not mention a tampering-with-evidence charge or Williams's sale of a gun two days after the murder.  However, the evidence presented at the probable-cause hearing supports a finding that the murder and the tampering-with-evidence acts were connected, because it showed that the tampering-with-evidence charge stemmed from Williams's actions to avoid prosecution by getting rid of the murder weapon.

{¶ 25} Williams shot Leslie with a 9 mm gun on April 2, 2020, killing her. Two days later, Williams and Thompson discussed Williams's selling to Thompson a "dirty" 9 mm gun.  After Williams sold the gun to Thompson, Williams asked Thompson what he had done with the gun, because the "gun was hot."  Williams

later explained to Thompson that he had "put in some work with the gun" with Heard and hoped that Thompson did not have it anymore. This evidence demonstrates that the tampering-with-evidence charge arose from the murder that was the basis of the juvenile complaint, because it shows that Williams sold the 9 mm gun that was used to commit the murder.

### III. CONCLUSION

{¶ 26} Applying *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, we hold that Williams was properly charged with and convicted of tampering with evidence in adult court, because the charge was rooted in the acts for which he was bound over from juvenile court. We reverse the judgment of the First District Court of Appeals and remand the case to that court for it to address any remaining assignments of error.

Judgment reversed

and cause remanded.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., concurs in judgment only, with an opinion joined by DEWINE and WELBAUM, JJ.

JEFFREY M. WELBAUM, J., of the Second District Court of Appeals, sitting for DETERS, J.

_____

**KENNEDY, C.J., concurring in judgment only.**

{¶ 27} "[S]tare decisis isn't supposed to be the art of methodically ignoring what everyone knows to be true." *Ramos v. Louisiana*, 590 U.S. __, __, 140 S.Ct. 1390, 1405, 206 L.Ed.2d 583 (2020). And although stare decisis is most compelling when precedent involves statutory construction, *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 6, 539 N.E.2d 103 (1989), it has never been an " 'inexorable command,' " *id.*, quoting *Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 238, 44 S.Ct. 302, 68 L.Ed. 646 (1924) (Brandeis, J., dissenting). Instead,

"stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable." *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604 (1940).

{¶ 28} When a court, under the guise of statutory construction, changes the meaning of what the legislature enacted, the court goes beyond the judicial power "to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803), and encroaches on the legislative power to write what the law is and amend the law. And when a court adheres to an act of statutory misinterpretation by applying stare decisis, the court "perpetuates a usurpation of the legislative power," *Gamble v. United States*, 587 U.S. 678, 718, 139 S.Ct. 1960, 204 L.Ed.2d 322 (2019) (Thomas, J., concurring). If a court palpably misinterprets a statute, then stare decisis does not stand in the way of correcting that error; rather, it is the duty of the court to overturn bad precedent when necessary to give effect to the written law that the legislature enacted.

{¶ 29} When it comes to our decisions in *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, we know what the law is and what it is not.

{¶ 30} Former R.C. 2151.23(H), 2019 Am.Sub.H.B. No. 166, which was in effect when the offenses in this case occurred, provided that there was no limitation on the jurisdiction of an adult court over a juvenile's case following transfer of the case from the juvenile court to the adult court for prosecution of the juvenile as an adult: "The court to which the case is transferred for criminal prosecution * * * has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case *originally had been commenced in that court.*" (Emphasis added.) That jurisdiction "includ[ed], but [was] not limited to, jurisdiction to * * * enter a judgment of conviction * * *, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included

12

offense, or for the commission of another offense that *is different from the offense charged.*" (Emphasis added.) *Id.*

**{¶ 31}** Yet in *Smith*, this court held that the adult court to which the case is transferred lacks jurisdiction over charges for which the juvenile court found no probable cause to believe that the juvenile committed them. *Smith* at ¶ 44. And in *Burns*, this court said that the adult court does have jurisdiction over charges that were not alleged in the juvenile complaint, but only if those charges are "rooted in the acts that were the subject of the juvenile complaint." *Burns* at ¶ 13.

**{¶ 32}** Neither of the jurisdictional limitations from *Smith* and *Burns* can reasonably be drawn from the plain language of the bindover statutes. And because *Smith* and *Burns* so palpably depart from—and in fact distort—the unambiguous statutory text, stare decisis is not an obstacle to correcting the erroneous conclusions in those cases. I would overrule *Smith* and *Burns* today.

**{¶ 33}** Although the majority leaves *Smith* and *Burns* standing, it nonetheless reaches the right result. Once the juvenile court transferred appellee Timothy Williams's case to the adult court, Williams could be indicted for and convicted of the offense of tampering with evidence even though the acts constituting that offense were not alleged in the juvenile complaint.

**{¶ 34}** I therefore concur in this court's judgment reversing the judgment of the First District Court of Appeals and remanding this matter to that court for it to review any assignments of error that it did not address in the first instance.

## I. Jurisdiction of Juvenile and Adult Courts Over Cases Involving Juveniles

**{¶ 35}** "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23. " ' A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.' " *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. "Rather, the focus is

on whether the forum itself is competent to hear the controversy." *Id.* " 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " (Ellipses added in *Pizza*.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854).

**{¶ 36}** Article IV, Section 4(B) of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." We have recognized that the General Assembly has "exclusive authority * * * to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 2.

**{¶ 37}** The General Assembly exercised that authority when it vested in the juvenile courts "exclusive original jurisdiction," R.C. 2151.23(A)(1), over cases in which a minor is alleged to be delinquent for committing an act that would be a criminal offense if committed by an adult, *see In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11. However, the legislature created " 'a narrow exception to the general rule that juvenile courts have exclusive subject matter jurisdiction over any case involving a child.' " *Aalim* at ¶ 2, quoting *State v. Wilson*, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995). If a child is 14 years old or older when he or she is charged with an alleged act that would be a criminal offense if committed by an adult, the case may, and sometimes must, be transferred to adult court for prosecution. *See* R.C. 2151.23(H), 2152.10, and 2152.12.

**{¶ 38}** Effective April 4, 2023, the General Assembly amended the statutes providing for discretionary and mandatory bindovers to adult court. *See* 2022

Am.Sub.S.B. No. 288. Those amendments do not impact the bindover in this case, which predated the amendments enacted by S.B. 288.

{¶ 39} At the time Williams committed his offenses in this case and at the time of the bindover, the version of R.C. 2152.12(A)(1)(a)(i) in effect provided:

> After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer *the case* if * * * [t]he child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged.

(Emphasis added.) Former R.C. 2152.12(A)(1)(a), 2016 Sub.H.B. No. 158.

{¶ 40} Former R.C. 2151.23(H), 2019 Am.Sub.H.B. No. 166, stated that except as provided in R.C. 2152.121, after a case was transferred from juvenile court to adult court for criminal prosecution, the juvenile court lacked subject-matter jurisdiction to hear or determine the case. Instead, "[t]he court to which the case [was] transferred for criminal prosecution * * * ha[d] jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court." Former R.C. 2151.23(H), 2019 Am.Sub.H.B. No. 166. Former R.C. 2151.23(H) specified that the adult court had subject-matter jurisdiction to accept a plea or a verdict and to enter a judgment of conviction "for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged."

**{¶ 41}** So once a juvenile's case was transferred to adult court, the adult court was the proper forum for that case and had subject-matter jurisdiction over the case, including charges that were not alleged in the juvenile-court complaint. Any error in the adult court's adjudication of the case after the transfer involved an error in the exercise of jurisdiction in the particular case, not a defect in the court's subject-matter jurisdiction.

## II. *Smith* and *Burns*

**{¶ 42}** We addressed the bindover statutes recently in *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801. In *Smith*, this court stated that "a juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found." *Smith* at ¶ 29. We held that "[i]n the absence of a juvenile court's finding probable cause * * *, no adult court has jurisdiction over acts that were charged in but not bound over by the juvenile court." *Id*. at ¶ 44.

**{¶ 43}** But in *Burns*, this court backtracked from its holding in *Smith* and clarified that "an adult court is not necessarily limited to considering only the specific acts bound over from the juvenile court." *Burns* at ¶ 12. Rather, "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Id*. at ¶ 13. This court concluded in *Burns* that the absence of probable-cause findings by the juvenile court did not preclude the adult court from exercising jurisdiction over charges that are based on conduct that was alleged in the juvenile-court complaint, *id*.; however, this court held that the adult court cannot exercise jurisdiction over charges if they were included in the juvenile complaint but were found by the juvenile court not to be supported by probable cause, *id*. at ¶ 9-10.

16

**{¶ 44}** The problem is that this court departed from the plain language of the then-applicable bindover statutes when it held in *Smith* and reiterated in *Burns* that a juvenile court's finding that a charge is not supported by probable cause is a jurisdictional bar to prosecution in adult court. *See Smith* at ¶ 44; *Burns* at ¶ 8. And this court in *Burns* added words to former R.C. 2151.23(H) in holding that "new indicted charges in the adult court" are permitted only "when the new charges are *rooted in* the acts that were the subject of the juvenile complaint." (Emphasis added.) *Burns* at ¶ 13.

**{¶ 45}** I recognize that "the doctrine of stare decisis dictates adherence to prior judicial decisions," *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, at ¶ 38. And it has been said that stare decisis is most compelling when, as here, the precedent involves statutory construction; courts often justify their "extraordinary reluctance to overturn statute-based precedents" by citing the legislature's prerogative "to correct erroneous interpretations of legislative intent," *Rocky River*, 43 Ohio St.3d at 6, 539 N.E.2d 103.

**{¶ 46}** Yet, stare decisis is ultimately a judicial policy that "is an exception to textualism (as it is to any theory of interpretation) born not of logic but of necessity." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 414 (2012). Its "function 'is to make us say that what is false under proper analysis must nonetheless be held to be true, all in the interest of stability.' " *Id.* at 413, quoting Scalia, *A Matter of Interpretation*: *Federal Courts and the Law* 139 (1997). And it "reflects a judgment 'that "in most matters it is more important that the applicable rule of law be settled than that it be settled right." ' " *Knick v. Scott, Pennsylvania*, 588 U.S. 180, 202, 139 S.Ct. 2162, 204 L.Ed.2d 558 (2019), quoting *Agostini v. Felton*, 521 U.S. 203, 235, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting).

**{¶ 47}** The precondition for application of this judicial policy born not of logic but of necessity, then, is that the precedent misinterpreted the statutory text and got the law wrong—"stare decisis has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up," *Kimble v. Marvel Entertainment, L.L.C.*, 576 U.S. 446, 455, 135 S.Ct. 2401, 192 L.Ed.2d 463 (2015).  But "[the judicial power] is the power 'to say what the law is,' not the power to change it."  *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549, 111 S.Ct. 2439, 2451, 115 L.Ed.2d 481 (1991) (Scalia, J., concurring in the judgment), quoting *Marbury*, 5 U.S. at 177, 2 L.Ed. 60.  That is, a court lacks the power to rewrite a statute through statutory misinterpretation.

**{¶ 48}** For this reason, even when precedent involves statutory construction, application of stare decisis is not an " 'inexorable command,' " *Rocky River*, 43 Ohio St.3d at 6, 539 N.E.2d 103, quoting *W.C. Dawson & Co.*, 264 U.S. at 238, 44 S.Ct. 302, 68 L.Ed. 646 (Brandeis, J., dissenting).  A clearly erroneous interpretation of a statute should not remain the law simply because it was earlier in time.  Instead, "[a] demonstrably incorrect judicial decision * * * is tantamount to *making* law, and adhering to it * * * perpetuates a usurpation of the legislative power." (Emphasis sic.)  *Gamble*, 587 U.S. at 718, 139 S.Ct. 1960, 204 L.Ed.2d 322 (Thomas, J., concurring).  In such a case, the court should correct the error.

**{¶ 49}** In seeking to uphold the judicial policies that counsel in favor of retaining a case as precedent notwithstanding the fact that the case was wrongly decided, this court established the test in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.  That test provides that a prior decision of this court "may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it."  *Id.* at ¶ 48.

**{¶ 50}** I am not convinced that the *Galatis* test properly balances the competing priorities—textual versus pragmatic—that come into play when deciding to retain precedent. And applying that test might cause this court to uphold a decision that clearly usurped the legislature's authority to write the law, simply because this court's misconstruction of a statute is "workab[le]," *id.*

**{¶ 51}** But it is not necessary to map out the precise contours of stare decisis now. This is a criminal case, and this court has overruled criminal-law precedent in the past without being controlled by the *Galatis* test. *See State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, 162 N.E.3d 776, ¶ 30; *id.* at ¶ 85 (Kennedy, J., concurring in judgment only) (citing cases). As I have explained:

> The protection of individual liberty, which is at stake in a criminal proceeding, should never depend on a party's ability to prove that the three prongs of the *Galatis* test have been met. We should not uphold a wrongly decided case simply because a criminal defendant is unable to establish that an erroneous holding has become unworkable and no one (or some undefined number of people) has relied on it. Our precedent in criminal cases can chill the behavior of law-abiding Ohioans while sometimes literally rising to a matter of life or death. If a decision in a criminal case is wrong, it should be overruled without resort to a binding test.

*Id.* at ¶ 86 (Kennedy, J., concurring in judgment only). Therefore, to overrule *Smith* and *Burns*, it is enough to show that they were wrongly decided.

**{¶ 52}** *Smith*'s holding that an adult court lacks jurisdiction over charges for which the juvenile court found no probable cause misstated the law. Former R.C. 2152.12(A)(1)(a), 2016 Sub.H.B. No. 158 made clear that the "case" was transferred from the juvenile court to the adult court—not just the charges for which

the juvenile court found probable cause. Similarly, former R.C. 2152.12(I), 2016 Sub.H.B. No. 158, provided that a "transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and *the case* then shall be within the jurisdiction of the court to which it is transferred as described in [R.C. 2151.23(H)]." (Emphasis added.) Former R.C. 2151.23(H), 2019 Am.Sub.H.B. No. 166, stated that "[t]he court to which *the case* is transferred for criminal prosecution pursuant to [R.C. 2152.12] has jurisdiction subsequent to the transfer to hear and determine *the case* in the same manner as if *the case* originally had been commenced in that court." (Emphasis added.) It is *the case* that was the focus of the bindover statutes.

{¶ 53} "Case" means a "civil or criminal proceeding, action, suit, or controversy." *Black's Law Dictionary* 266 (11th Ed.2019). "The word 'action' has typically been understood to refer to the entire legal proceeding, regardless of how many claims or charges are included in the proceeding. This understanding is consistent with common parlance. When we say that someone pursued a legal action, we are talking about the entire proceeding, not some discrete part of the proceeding." (Citations omitted.) *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 13. Similarly, in common parlance, a criminal "case" means all the charges that arose from a series of related events. In this context, the "case" in former R.C. 2151.23, 2019 Am.Sub.H.B. No. 166, included all the acts that were charged in the juvenile complaint, and the "case" even included acts for which the juvenile court made a finding of no probable cause.

{¶ 54} Contrary to this court's contention in *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, at ¶ 44, former R.C. 2152.12(I), 2016 Sub.H.B. No. 158, does not say that the jurisdiction of the juvenile court abates only as to the acts charged for which the juvenile court finds probable cause. Instead, that statute provided that upon transfer to the adult court, the jurisdiction of the juvenile court

20

abated regarding *all* the delinquent acts alleged in the complaint. And former R.C. 2151.23(H), 2019 Am.Sub.H.B. No. 166, clarified that after a juvenile's case was bound over to adult court, the juvenile could be charged with and convicted of any offense—even one that was different from the offenses charged in the juvenile complaint. The adult court's jurisdiction "includ[ed], but [was] not limited to, jurisdiction to * * * enter a judgment of conviction * * *, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that *is different from the offense charged.*" (Emphasis added.) *Id.*

{¶ 55} *Smith*'s holding, which was reaffirmed in *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 10, that an adult court cannot exercise jurisdiction over charges that have been bound over from juvenile court for which the juvenile court made a finding of no probable cause is simply wrong, and because it is wrong, it should be overruled.

{¶ 56} The language in *Burns* stating that "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred," *id.* at ¶ 13, rewrites the law. Although this court in *Burns* purported to rely on former R.C. 2151.23(H), that provision does not contain any language limiting new indicted charges to those that are "rooted in" the acts alleged in the juvenile complaint.

{¶ 57} Rather, former R.C. 2151.23(H) provided that when a juvenile's case was transferred to adult court for prosecution, the adult court had subject-matter jurisdiction to hear and determine the case and to convict the juvenile "for the commission of the offense that was the basis of the transfer of the case" or "for the commission of another offense that is different from the offense charged." Under the plain words of the statute, then, the adult court could enter a conviction for an offense that was different from the offense that was the basis of the transfer

to adult court, including an offense that was not rooted in the acts that were the subject of the juvenile complaint. *Burns*'s "rooted in" standard is inconsistent with the language of former—and current—R.C. 2151.23(H), and it should be overruled as well.

{¶ 58} But even if it were not enough that the criminal-law precedent established in *Smith* and *Burns* is wrong, the traditional considerations for deciding whether to abandon precedent weigh heavily in favor of overruling those cases. These considerations include the age of the precedent, the precedent's workability, whether those who have relied on the precedent have any justifiable reliance interests, *see Ramos*, __ U.S. at __, 140 S.Ct. at 1414, 206 L.Ed.2d 583 (Kavanaugh, J., concurring in part), whether the precedent has been generally accepted by society, and whether the precedent puts judges in the position of making policy judgment calls better suited for other officials, Scalia & Garner, *Reading Law* at 412. These considerations weigh in favor of overruling *Smith* and *Burns.*

{¶ 59} *Smith* and *Burns* are recent decisions that have not had time to receive general acceptance by society, and "[t]he freshness of error not only deprives it of the respect to which long-established practice is entitled, but also counsels that the opportunity of correction be seized at once, before state and federal laws and practices have been adjusted to embody it," *South Carolina v. Gathers*, 490 U.S. 805, 824, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) (Scalia, J., dissenting). Overruling *Smith* and *Burns* now and simply following the plain language of the bindover statutes would provide a more workable, bright-line rule that would not require judgment calls regarding whether an adult-court charge is sufficiently rooted in the acts alleged in the juvenile complaint so as to give the adult court jurisdiction. And because this court's holdings in *Smith* and *Burns* can amount to jurisdictional bars, if prosecutors and adult-court judges determine incorrectly that charges may be prosecuted in adult court, the consequence is that

all the time and resources put into any adult-court proceedings on those charges are wasted. Lastly, overruling *Smith* and *Burns* would not affect any reliance interests. No juvenile would base his or her decision to commit offenses on the possibility that a juvenile-court judge would find no probable cause regarding the offenses or that a prosecutor would allege in the juvenile complaint some but not all of the offenses for which the state would seek to prosecute the juvenile as an adult.

{¶ 60} Consequently, I would overrule *Smith* and *Burns*.

### III. Applying the Correct Law to the Facts of This Case

{¶ 61} Applying former R.C. 2151.23(H) here demonstrates that the First District erred in determining that the adult court lacked subject-matter jurisdiction to convict Williams of tampering with evidence. The state had filed a juvenile complaint alleging that Williams was a delinquent child for committing acts that would be murder and felonious assault if committed by an adult, and the juvenile court found probable cause to believe that he had committed those acts. After the juvenile court transferred Williams's case to adult court and the grand jury indicted him for murder, felonious assault, and tampering with evidence, the adult court had jurisdiction to convict him of each of those offenses. It is of no import that the juvenile complaint did not allege that Williams was a delinquent child for committing acts that would be tampering with evidence if committed by an adult, because former R.C. 2151.23(H) permitted the adult court to convict him of offenses different from those that were specifically charged in the juvenile complaint.

{¶ 62} Consequently, the court of appeals erred in holding that the adult court lacked jurisdiction to convict Williams of tampering with evidence.

### IV. Conclusion

{¶ 63} Under the bindover statutes in effect prior to the amendments in 2022 Am.Sub.S.B. No. 288, when a juvenile's case was transferred from juvenile court for prosecution in adult court, the adult court had subject-matter jurisdiction

to convict the juvenile of the offense that was the basis of the transfer of the case or of another offense that was different from the offense that was charged in the juvenile complaint. So, although the juvenile complaint in this case did not charge Williams with acts that would be tampering with evidence if committed by an adult, the adult court had jurisdiction to convict him of that offense.

{¶ 64} For these reasons, I concur in this court's judgment reversing the judgment of the First District Court of Appeals and remanding this matter to that court for it to review any assignments of error that it did not consider in the first instance.

DEWINE and WELBAUM, JJ., concur in the foregoing opinion.

_____

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Mathura J. Sridharan, Deputy Solicitor General; and Melissa A. Powers, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellant.

Elizabeth R. Miller, Ohio Public Defender, and Lauren Hammersmith and Victoria Ferry, Assistant Public Defenders, for appellee.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Gregory Ochocki, Assistant Prosecuting Attorneys, urging reversal for amicus curiae, Cuyahoga County Prosecutor's Office.

_____