[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Taylor*, Slip Opinion No. 2024-Ohio-1752.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1752

THE STATE OF OHIO, APPELLANT, *v.* TAYLOR, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Taylor*, Slip Opinion No. 2024-Ohio-1752.]**

*Bindover jurisdiction—Sixth Amendment right to counsel—Court of appeals erred in holding that adult court lacked jurisdiction to convict appellee of felony murder—Court of appeals erred in concluding that appellee's statements to police in absence of counsel should have been suppressed, because no criminal proceedings had been commenced when he was interrogated— Court of appeals' judgment reversing conviction reversed and cause remanded to court of appeals.*

(No. 2022-1069—Submitted September 13, 2023—Decided May 9, 2024.)

APPEAL from the Court of Appeals for Franklin County,

No. 19AP-396, 2022-Ohio-2877.

_____

**STEWART, J., writing for the court with respect to Parts I and II(B) and announcing the judgment of the court with respect to Parts II(A) and III.**

{¶ 1} In this discretionary appeal from a judgment of the Tenth District Court of Appeals, we consider whether the appellate court correctly determined that the General Division of the Franklin County Court of Common Pleas ("adult court") lacked jurisdiction to convict appellee, Damon L. Taylor, of felony murder. We are also asked to decide whether the appellate court correctly determined that certain statements Taylor made to police should have been suppressed. We conclude that both determinations were incorrect, and we therefore reverse the judgment of the court of appeals and remand this case to that court.

{¶ 2} First, we conclude that the adult court had jurisdiction over the felony-murder charge against Taylor. The juvenile division of the common pleas court found probable cause to believe that Tayor committed the offense of complicity to commit murder, and the felony-murder charge is rooted in the acts supporting the complicity charge. *See State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, ¶ 13.

{¶ 3} Second, we hold that the court of appeals erred in concluding that Taylor's December 2016 statements to police should have been suppressed. The Sixth Amendment right to counsel does not attach until the initiation of a criminal prosecution against the accused, and at the time Taylor was interrogated, no criminal proceedings had been commenced. And even if the Sixth Amendment right to counsel had attached, Taylor waived that right when he waived his Fifth Amendment right to counsel after being given *Miranda* warnings.[1] Therefore, the Sixth Amendment did not require the presence of counsel during Taylor's December 2016 interrogation, and the adult court did not err in admitting his statements to police.

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} Just after midnight on April 15, 2016, Enrique Straughter was shot and killed at a Reynoldsburg apartment complex. Responding officers discovered the gun rail of a Smith & Wesson M&P semiautomatic pistol, live rounds, shell casings, and a key fob that unlocked a nearby Chevrolet Malibu. Taylor's mother had reported the car as stolen, and she told the police that she believed Taylor had taken it. She also informed the police that a firearm—a Smith & Wesson M&P40 pistol belonging to Taylor's mother's boyfriend—was in the Malibu.

{¶ 5} Later that day, officers located Taylor, who was then just days away from his 18th birthday, and took him into custody to be questioned as a stolen-car suspect and a person of interest in the homicide. A detective read Taylor his *Miranda* rights, and Taylor invoked his right to counsel. Despite his invocation, the detective continued speaking with and questioning Taylor, and collected a DNA sample and conducted a gunshot residue test. Taylor was then released to his counsel.

{¶ 6} DNA testing connected Taylor to the gun rail found at the murder scene. On December 12, 2016, police arrested Taylor and interrogated him at the police station. The detective who interviewed him was aware that Taylor was already represented by an attorney regarding the investigation into Straughter's killing. Without his attorney present, Taylor waived his *Miranda* rights, including the right to counsel, answered questions, gave conflicting stories, and eventually claimed that he had witnessed another person, Damion Wade, shoot Straughter.

{¶ 7} That evening, the state filed a complaint in the Franklin County juvenile court charging Taylor with Straughter's murder under R.C. 2903.02(A). Pursuant to R.C. 2152.12(A), the state sought mandatory bindover of the charge to the general division of the common pleas court for prosecution of Taylor as an adult. The juvenile court found probable cause to believe that Taylor committed

the offense of complicity to commit murder (with a firearm specification) and transferred the matter to the adult court.

{¶ 8} Taylor was then indicted on one count each of aggravated murder, murder, and felony murder predicated on felonious assault, with each count carrying a firearm specification. The adult court suppressed Taylor's DNA sample and any statements that he made to police on April 15, 2016, after he had invoked his right to counsel, but the court allowed the admission of statements Taylor made to police on December 12, 2016.

{¶ 9} A jury acquitted Taylor of aggravated murder and murder but convicted him of felony murder and the accompanying firearm specification. The adult court imposed an aggregate sentence of 18 years to life in prison.

{¶ 10} The Tenth District vacated Taylor's conviction and remanded the case to the juvenile court for further proceedings. 2022-Ohio-2877, 194 N.E.3d 867, ¶ 34. Relying on this court's recent decision in *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, the court of appeals explained that the adult court obtains jurisdiction over only those acts that were charged in the juvenile complaint and that the juvenile court has found probable cause to believe the juvenile committed. 2022-Ohio-2877 at ¶ 16-19. The appellate court concluded that here, the offense of complicity to commit murder, for which the juvenile court found probable cause, was not equivalent to the offense of felony murder and that the adult court therefore lacked jurisdiction to convict Taylor of felony murder in the absence of a finding by the juvenile court of probable cause to believe that Taylor committed that offense. *Id*. at ¶ 22.

{¶ 11} The court of appeals also reversed the adult court's order denying Taylor's motion to suppress his December 12, 2016 statements to police. *Id.* at ¶ 32. The appellate court acknowledged that Taylor had validly waived his Fifth Amendment right to counsel. *Id.* at ¶ 26. However, the court of appeals applied a different analysis to whether Taylor had waived his Sixth Amendment right " 'to

4

have counsel present at all "critical" stages of the criminal proceedings,' " including " '[i]nterrogation by the State.' " *Id.* at ¶ 27, quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), quoting *United States v. Wade*, 388 U.S. 218, 227-228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed.2d 158 (1932). It determined that the Sixth Amendment right to counsel had attached by the time officers arrested and interrogated Taylor, because an adversarial judicial proceeding had begun "when the state approved [the detective's] request to file a charge and arrest Taylor." *Id.* at ¶ 29. The court noted that Taylor invoked his right to counsel on April 15, 2016, and further, that under the totality of the circumstances, he had not knowingly, voluntarily, and intelligently waived his Sixth Amendment right to counsel when he executed the *Miranda*-waiver form on December 12, 2016. *Id.* at ¶ 24, 30-31. The court emphasized the fact that the detective was aware that Taylor had been represented by counsel but nonetheless chose to interrogate him. *Id.* at ¶ 30.

{¶ 12} We accepted the state's appeal to review five propositions of law:

1. *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, does not prohibit complicity-based mandatory bindovers on category-one offenses.

2. R.C. 2151.23(H) authorizes an adult court to convict a defendant of any offense "rooted in" the offense that was the basis of the transfer, unless the conviction is for an offense that was charged in juvenile court and found to be unsupported by probable cause.

3. The jurisdiction referenced in R.C. 2151.23(H) implicates jurisdiction over the case, not subject-matter jurisdiction.

4. The right to counsel in juvenile proceedings under either the Sixth Amendment or the Due Process Clause attaches not upon the State's approval of charges, but rather upon the actual filing of the complaint.

5. The right to counsel under either the Sixth Amendment or the Due Process Clause may not be anticipatorily asserted prior to the filing of the juvenile complaint and may be waived without the advice of counsel.

*See* 168 Ohio St.3d 1479, 2022-Ohio-4617, 200 N.E.3d 261.

## II. LAW AND ANALYSIS

### A. The Adult Court Had Jurisdiction

{¶ 13} This court has considered bindover jurisdiction on two recent occasions, and this case is governed by the same analysis set forth in the first decision, *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and edified in *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801. Both decisions examined the prior version of R.C. 2151.23(H) and analyzed the scope of jurisdiction in cases that begin in juvenile court and are then transferred to adult court. In *Smith*, we held that "when a juvenile court determines that there is no probable cause for an act charged, the adult court has no jurisdiction over that charge." *Smith* at ¶ 2. *Burns* considered a related question—"whether the state must prove in juvenile court that there is probable cause to believe that a juvenile committed every act charged before the juvenile may be indicted for those acts in adult court." *Burns* at ¶ 1. We answered that "a case transferred from juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Id.* at ¶ 13. In *Burns*, the state did not bring charges for attempted murder in the juvenile court, but the grand

jury indicted on two counts for attempted murder. *See id.* Because those charges were rooted in the same acts that were the subject of the juvenile complaint (involving the same conduct, against the same victims, at the same time), the state could proceed with those counts in adult court. *See id.*

{¶ 14} Here, the juvenile court found that there was probable cause to believe that Taylor committed the offense of complicity to commit murder, with the attendant firearm specification, and it bound that charge over to the adult court. The grand jury then charged Taylor with aggravated murder, murder, and felony murder predicated on felonious assault, with each count including a firearm specification. At trial, Taylor was found guilty of felony murder only, along with the accompanying firearm specification.

{¶ 15} This case is similar to *Burns* in that the state did not present the felony-murder charge in juvenile court, so there was no finding of probable cause or a lack thereof regarding that offense. *See Burns* at ¶ 13. But this case also resembles *Burns* in another respect: the felony-murder charge was rooted in the same acts and events as the complicity-to-commit-murder charge—namely, the fatal shooting of Straughter. *See id.* Both charges rely on the same set of facts that was present in the juvenile-court complaint; therefore, under former R.C. 2151.23(H), 2016 Am.Sub.H.B. No. 410, and *Smith* and *Burns*, the adult court had jurisdiction over the felony-murder charge.

{¶ 16} There is one wrinkle in applying *Smith* and *Burns* to this case, however, as Taylor noted in his supplemental brief to the Tenth District and his briefing in this court. While the juvenile court found that probable cause existed to believe that Taylor was complicit in Straughter's murder, that court did *not* find probable cause to believe that "he committed the murder by pulling the trigger." The juvenile-court judge noted the lack of probable cause on the principal-offender theory twice from the bench, and she reaffirmed the court's finding in a judgment entry. Despite the juvenile court's finding that there was no probable cause to

believe that Taylor pulled the trigger, the state proceeded under both theories in adult court—that Taylor either shot Straughter himself *or* that he was complicit in Straughter's killing by providing the gun to another shooter—and the jury was instructed that it could find Taylor guilty as a "principal offender *or* as a complicitor." (Emphasis added.) In fact, Taylor's defense counsel argued that the jury should not be instructed on complicity because, she asserted, there was a lack of evidence to support that theory. The jury-verdict form similarly did not require the jury to specify whether it found Taylor guilty under a principal or a complicity theory. However, Taylor's counsel did not object to the verdict forms at trial.

**{¶ 17}** To be clear, the state could not and should not have charged Taylor as a principal, since the juvenile court found no probable cause to believe that Taylor was the person who shot Straughter. *See Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, at ¶ 2. But it is unclear whether the jury even found Taylor guilty of felony murder under a principal-offender theory given the opaque verdict forms. Based on the unclear record and Taylor's failure to clarify or correct the record below, we do not consider this issue and it would not affect our analysis.

**{¶ 18}** Finally, we decline Taylor's invitation to overrule *Burns.* The decision to overrule precedent should not be made lightly, and Taylor has not put forth a compelling argument that *Burns* is incorrect or impractical. We further note that the General Assembly embraced this court's correct interpretation of R.C. 2151.23(H) when the legislature amended that provision and enacted R.C. 2152.022 in order to ratify the rule we announced in *Smith* and subsequently edified in *Burns*. *See* 2022 Am.Sub.S.B. No. 288; Ohio Legislative Service Commission, *Final Analysis, Am.Sub.S.B. No. 288*, at 12, 102-104, available at https://www.legislature.ohio.gov/download?key=20455&format=pdf (accessed Mar. 12, 2024) (noting that the changes to the bindover laws followed "the applicable case law under *State v. Smith*"). Additionally, the Tenth District did not have the opportunity to apply *Burns* in this case, as its decision was issued four

months prior to our release of *Burns*. It would be imprudent to overrule precedent that the court of appeals did not even cite in its analysis.

{¶ 19} In taking the position that *Smith* and *Burns* should be overruled, the first concurring opinion completely disregards the doctrine of stare decisis, and it does so unnecessarily. That opinion serves only to advocate for the contrary position asserted in those cases. *See* opinion concurring in part and concurring in judgment only, Kennedy, C.J., ¶ 48-54; *Smith* at ¶ 45 (Kennedy, J., dissenting); *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 66-69 (Kennedy, J., concurring in part and dissenting in part). And while the first concurring opinion posits that *Smith* and *Burns* were wrongly decided, the position it advances has been rejected four times by this court. *See Smith*; *Burns*; *State v. Williams*, __ Ohio St.3d __, 2024-Ohio-1433, __ N.E.3d __, ¶ 15-21. In fact, the only change in the relevant law since this court decided *Smith* and *Burns* has been the General Assembly's enactment of legislation ratifying the rule set forth in *Smith*, and as the second concurring opinion notes, overruling those cases would create a "competing set of approaches" to this narrow issue for "pre- and post-April 2023 bindovers," opinion concurring in part and concurring in judgment, Fischer, J., ¶ 64.

{¶ 20} Consequently, the court of appeals erred in holding that the adult court lacked jurisdiction to convict Taylor of felony murder.

**B. Taylor Waived His Right to Counsel**

*1. Sixth Amendment Right to Counsel*

{¶ 21} The court of appeals held that Taylor's December 12, 2016 statements to police should have been suppressed, based solely on its interpretation of the Sixth Amendment to the United States Constitution. 2022-Ohio-2877, 194 N.E.3d 867, at ¶ 28-32.

{¶ 22} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." Under the plain language of the Sixth Amendment, the right to counsel

belongs to an *accused* and does not attach until a *criminal prosecution* has commenced. *Rothgery v. Gillespie Cty., Texas*, 554 U.S. 191, 198, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008). The United States Supreme Court has "pegged commencement [of a criminal prosecution] to ' "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." ' " *Id.*, quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion). "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. * * * Interrogation by the State is such a stage." *Montejo*, 556 U.S. at 786, 129 S.Ct. 2079, 173 L.Ed.2d 955, quoting *Wade*, 388 U.S. at 227-228, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Powell*, 287 U.S. at 57, 53 S.Ct. 55, 77 L.Ed. 158.

**{¶ 23}** Taylor was taken into custody and interrogated on December 12, 2016. His criminal prosecution commenced after that interrogation—at the earliest, with the filing of the juvenile complaint, which occurred several hours after the interrogation ended. Because a criminal prosecution had not been commenced before the December 12, 2016 interrogation that resulted in Taylor's statements to police, the Sixth Amendment right to have counsel present at all critical stages of the proceedings had not yet attached.

**{¶ 24}** But even if the Sixth Amendment right to counsel had attached, Taylor waived it. "[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." (Citations omitted.) *Montejo* at 786. "And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and

10

agrees to waive those rights, that typically does the trick" to waive the Sixth Amendment right to counsel. *Id.*

{¶ 25} The court of appeals concluded that Taylor had validly waived his Fifth Amendment right to counsel, 2022-Ohio-2877, 194 N.E.3d 867, at ¶ 26, a holding that Taylor has not challenged in this court and that is now the law of the case. His waiver of his Fifth Amendment right to counsel also relinquished any Sixth Amendment right to counsel he may have had.

{¶ 26} Therefore, the court of appeals erred in concluding that the Sixth Amendment required the suppression of the statements Taylor made to police on December 12, 2016.

### 2. Due-Process Right to Counsel

{¶ 27} Lastly, the right to counsel in a juvenile-delinquency proceeding is guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79. That right to counsel is codified in R.C. 2151.352, in which "the legislature provided a statutory right to appointed counsel that goes beyond constitutional requirements," *C.S.* at ¶ 83. Like the Sixth Amendment, R.C. 2151.352 affords juveniles a right to counsel at "all stages" of the proceedings, and this court has recognized that the statutory right to counsel in juvenile cases attaches "upon the filing of a complaint in juvenile court or upon initial appearance in the juvenile court," *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, syllabus.

{¶ 28} To the extent that the due-process right to counsel applies in this case to Taylor, who was an adult at the time of the December 12, 2016 interrogation, it did not attach until the state filed the complaint in the juvenile court. A video recording of that interview reveals that Taylor was brought into the interrogation room at 11:18 a.m. and that he was taken from the interrogation room at 2:24 p.m. The juvenile complaint, however, is time stamped 9:21 p.m. the same day.

Consequently, the due-process right to counsel had not attached at the time Taylor made his December 12, 2016 statements to police.

### III. CONCLUSION

{¶ 29} The General Division of the Franklin County Court of Common Pleas had jurisdiction over the felony-murder charge against Taylor pursuant to former R.C. 2151.23(H), as that charge was "rooted in the [same] act[] that [was] the subject of the juvenile complaint but [was] not specifically named in the individual act[] transferred," *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 13. The felony-murder charge and the complicity-to-commit-murder charge both stemmed from Taylor's alleged involvement in the fatal shooting of Straughter. The state did not bring extraneous or completely unrelated charges in its case in the adult court. Moreover, while the state could not and should not have pursued charges against Taylor as a principal offender, the record does not establish that the jury convicted Taylor under that theory, and Taylor has forfeited any argument on this issue by failing to object on these grounds.

{¶ 30} Further, the Sixth Amendment right to counsel attaches upon the commencement of a criminal prosecution, and that occurred in this case after the police interrogated Taylor. Therefore, the state did not violate Taylor's Sixth Amendment right to counsel when it interviewed him on December 12, 2016, in the absence of his attorney. And even if the Sixth Amendment right to counsel had attached, Taylor validly waived it when he relinquished his Fifth Amendment right to counsel after he received the *Miranda* warnings.

{¶ 31} For these reasons, we reverse the judgment of the Tenth District Court of Appeals and remand this matter to that court for it to consider Taylor's assignments of error that were not considered in the first instance.

Judgment reversed
and cause remanded.

DONNELLY and FORBES, JJ., concur.

KENNEDY, C.J., concurs in part and concurs in judgment only in part, with an opinion joined by DEWINE and DETERS, JJ.

FISCHER, J., concurs in part and concurs in the judgment, with an opinion.

LISA FORBES, J., of the Eighth District Court of Appeals, sitting for BRUNNER, J.

_____

**KENNEDY, C.J., concurring in part and concurring in judgment only in part.**

{¶ 32} This case involves two distinct issues. The first is whether the Tenth District Court of Appeals correctly held that certain statements appellee, Damon L. Taylor, made to police should have been suppressed. I agree with the majority that the Sixth Amendment to the United States Constitution did not require the suppression of those statements, and I therefore join Part II(B) of the lead opinion.

{¶ 33} The second issue is whether the appellate court correctly held that the General Division of the Franklin County Court of Common Pleas lacked jurisdiction to convict Taylor of felony murder. I agree with the majority's conclusion that the Tenth District got it wrong and that the general division of the common pleas court had jurisdiction over the felony-murder charge against Taylor. I write separately, however, to explain why Ohio law requires this result.

{¶ 34} Under a mandatory bindover, a juvenile who is alleged to have committed a qualifying offense and who meets certain age requirements must be transferred from the jurisdiction of the juvenile court for prosecution in the general division of the common pleas court (the "adult court"). And under the bindover statutes in effect prior to their amendment in 2022 Am.Sub.S.B. No. 288, once a case was bound over, the adult court had subject-matter jurisdiction to hear and determine the case and convict the juvenile of the offense that was the basis of the transfer of the case or of another offense that was different from the offense charged

in the complaint filed in juvenile court. Former R.C. 2151.23(H), 2014 Am.Sub.S.B. No. 43.

{¶ 35} But this court in *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, grafted new limits onto the straightforward language of the bindover statutes that were in effect at the time of Taylor's transfer to the adult court. In *Smith*, the court held that the adult court lacks jurisdiction over charged offenses that the juvenile court found no probable cause to believe the juvenile had committed. *Smith* at ¶ 44. And in *Burns*, the court said that the adult court does have jurisdiction over charges that were not alleged in the juvenile complaint, but only if the new charges are "rooted in the acts that were the subject of the juvenile complaint." *Burns* at ¶ 13.

{¶ 36} Neither of these limitations on the adult court's jurisdiction appear in the plain language of former R.C. 2151.23(H), 2014 Am.Sub.S.B. No. 43. That statute stated that when a case was transferred from the juvenile court for prosecution in the adult court, the adult court had "jurisdiction * * * to enter a judgment of conviction * * * against the child for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, *or for the commission of another offense that is different from the offense charged*." (Emphasis added.) An adult court was therefore not deprived of jurisdiction over a charge when the juvenile court had found no probable cause to believe that the child committed the charged act. Nor was an adult court's jurisdiction limited to charges that either were transferred by the juvenile court or rooted in the acts alleged in the complaint. Because the holdings of *Smith* and *Burns* contradict the language enacted by the General Assembly, I would overrule those decisions today.

14

**{¶ 37}** In this case, the state charged Taylor with murder in the juvenile court, and the adult court had jurisdiction to convict him of felony murder even though that offense was not specifically charged in the juvenile complaint. Consequently, the court of appeals also erred in holding that the adult court lacked jurisdiction to convict Taylor for committing felony murder.

**{¶ 38}** Therefore, while I join Part II(B) of the lead opinion, I otherwise concur only in the court's judgment reversing the judgment of the Tenth District and remanding this matter to that court for it to review the assignments of error that it did not consider in the first instance.

## I. Jurisdiction of Juvenile and Adult Courts over Cases Involving Juveniles

**{¶ 39}** "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 23. " 'A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case.' " *Id.*, quoting *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. "Rather, the focus is on whether the forum itself is competent to hear the controversy." *Id.* " 'Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, "* * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." ' " (Ellipses added in *Pizza*.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 12, quoting *State ex rel. Pizza v. Rayford*, 62 Ohio St.3d 382, 384, 582 N.E.2d 992 (1992), quoting *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 499 (1854).

**{¶ 40}** Article IV, Section 4(B) of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." We have recognized that the General Assembly has "exclusive authority * * * to allocate certain subject

matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 2.

**{¶ 41}** The General Assembly exercised that authority when it vested in the juvenile courts "exclusive original jurisdiction," R.C. 2151.23(A)(1), over cases in which minors are alleged to be delinquent for committing acts that would be a criminal offense if committed by an adult, *see In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 11. However, the legislature created " 'a narrow exception to the general rule that juvenile courts have exclusive subject matter jurisdiction over any case involving a child.' " *Aalim* at ¶ 2, quoting *State v. Wilson*, 73 Ohio St.3d 40, 43, 652 N.E.2d 196 (1995). If a child is 14 years old or older at the time of the delinquent act and is alleged to have committed what would be an offense if committed by an adult, the case may, and sometimes must, be transferred to adult court for prosecution. *See* R.C. 2151.23(H), 2152.10, and 2152.12.

**{¶ 42}** Effective April 6, 2023, the General Assembly has amended the statutes providing for discretionary and mandatory bindovers to adult court. *See* 2022 Am.Sub.S.B. No. 288. Those amendments do not impact the bindover in this case, which predated the amendments enacted by S.B. 288.

**{¶ 43}** Relevant here, the applicable version of R.C. 2152.12(A)(1)(a)(i) provided as follows:

> After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer *the case* if * * * [t]he child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged.

16

(Emphasis added.) 2012 Am.Sub.S.B. No. 33.

{¶ 44} Former R.C. 2151.23(H), 2014 Am.Sub.S.B. No. 43, stated that except as provided in R.C. 2152.121, after a case was transferred to adult court for criminal prosecution, the juvenile court lacked subject-matter jurisdiction to hear or determine the case. Instead, "[t]he court to which the case is transferred for criminal prosecution * * * has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court." 2014 Am.Sub.S.B. No. 43. Former R.C. 2151.23(H) specified that the adult court had subject-matter jurisdiction to accept a plea or a verdict and to enter a judgment of conviction "for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged."

{¶ 45} So, once a juvenile's case was transferred to adult court, the adult court was the proper forum for the case and it therefore had subject-matter jurisdiction over that case, including offenses that were not initially charged in the juvenile-court complaint. Any error in the adult court's adjudication of the case after the transfer involved an error in the exercise of jurisdiction over that particular case, not a defect in the court's subject-matter jurisdiction.

## II. *Smith* and *Burns*

{¶ 46} We addressed the bindover statutes recently in *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801. In *Smith*, this court stated that "a juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found." *Id*. at ¶ 29. The court held that "[i]n the absence of a juvenile court's finding probable cause * * *, no adult court

has jurisdiction over acts that were charged in but not bound over by the juvenile court." *Id*. at ¶ 44.

{¶ 47} But in *Burns*, this court backtracked and clarified that "an adult court is not necessarily limited to considering only the specific acts bound over from the juvenile court." *Id*. at ¶ 12. Rather, "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Id*. at ¶ 13. The court in *Burns* concluded that the absence of a probable-cause finding in the juvenile court did not preclude the adult court from exercising jurisdiction over charges based on conduct alleged in the juvenile-court complaint, *id*.; however, it held that the adult court cannot exercise jurisdiction over charges if the same charges were also included in the juvenile complaint but found by the juvenile court not to be supported by probable cause, *id*. at ¶ 9-10.

{¶ 48} The problem is that this court departed from the plain language of the then-applicable bindover statutes when it held in *Smith* and reiterated in *Burns* that a juvenile court's finding of no probable cause is a jurisdictional bar to prosecution in adult court. *See Smith* at ¶ 44; *Burns* at ¶ 8. And the *Burns* court added words to former R.C. 2151.23(H) when it held that new indicted charges in adult court are permitted "when the new charges are *rooted in* the acts that were the subject of the juvenile complaint." (Emphasis added.) *Id*. at ¶ 13.

{¶ 49} *Smith*'s holding that the adult court lacks jurisdiction over charges for which the juvenile court found no probable cause misstated the law. Former R.C. 2152.12(A)(1)(a), 2016 Sub.H.B. No. 158, made clear that what was transferred from the juvenile court to the adult court was "the case"—not just the charges for which the juvenile court found probable cause. Similarly, former R.C. 2152.12(I), 2016 Sub.H.B. No. 158, provided that a "transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint,

18

and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and *the case* then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code." (Emphasis added.) Former R.C. 2151.23(H), 2014 Am.Sub.S.B. No. 43, stated that "[t]he court to which *the case* is transferred for criminal prosecution pursuant to [R.C. 2152.12] has jurisdiction subsequent to the transfer to hear and determine *the case* in the same manner as if *the case* originally had been commenced in that court." (Emphasis added.) It is *the case* that was the focus of the bindover statutes.

{¶ 50} "Case" means a "criminal proceeding, action, suit, or controversy." *Black's Law Dictionary* 266 (11th Ed.2019). "The word 'action' has typically been understood to refer to the entire legal proceeding, regardless of how many claims or charges are included in the proceeding. This understanding is consistent with common parlance. When we say that someone pursued a legal action, we are talking about the entire proceeding, not some discrete part of the proceeding." (Citations omitted.) *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 13. Similarly, in common parlance, a criminal "case" means all the charges that arose from a series of related events. Therefore, the "case" in former R.C. 2151.23, 2014 Am.Sub.S.B. No. 43, included all the acts that were charged in the juvenile complaint, and it even included acts for which the juvenile court made a finding of no probable cause.

{¶ 51} Contrary to this court's contention in *Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, at ¶ 44, former R.C. 2152.12(I), 2016 Sub.H.B. No. 158, did not say that the jurisdiction of the juvenile court abates only as to the acts charged for which probable cause was found. Instead, that version of the statute provided that the jurisdiction of the juvenile court abates regarding *all* the delinquent acts alleged in the complaint. And former R.C. 2151.23(H), 2014 Am.Sub.S.B. No. 43, clarified that after a bindover, a juvenile could be charged

with and convicted of any offense—even one that was different from the offense charged in the complaint filed in juvenile court. The adult court's jurisdiction "includ[ed], but [was] not limited to, jurisdiction to * * * enter a judgment of conviction * * *, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that *is different from the offense charged.*" (Emphasis added.) *Id.*

{¶ 52} *Smith*'s holding—which was reaffirmed in *Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801, at ¶ 10—that an adult court cannot exercise jurisdiction over bound-over charges for which the juvenile court made a finding of no probable cause is simply wrong, and because it is wrong, it should be overruled.

{¶ 53} The language in *Burns* at ¶ 13 stating that "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred" rewrote the law. Although the *Burns* court purported to rely on former R.C. 2151.23(H), that provision does not contain any language limiting new indicted charges to those that were "rooted in" the acts alleged in the juvenile complaint.

{¶ 54} Rather, former R.C. 2151.23(H) provided that when a case was transferred to adult court for prosecution, the adult court had subject-matter jurisdiction to hear and determine the case and to convict the juvenile "of the offense that was the basis of the transfer of the case" or "of another offense that is different from the offense charged." 2014 Am.Sub.S.B. No. 43. By the plain words of the statute, then, the adult court could enter a conviction for an offense that was different from the offense that was the basis of the transfer to adult court, including an offense that was not rooted in the acts that were the subject of the juvenile

complaint. *Burns*'s "rooted in" standard is inconsistent with the language of former—and current—R.C. 2151.23(H) and should be overruled as well.

### III. Applying the Correct Law to the Facts of this Case

{¶ 55} Applying former R.C. 2151.23(H) here demonstrates that the court of appeals erred in determining that the adult court lacked subject-matter jurisdiction to convict Taylor of felony murder. The state filed a juvenile complaint alleging that Taylor was a delinquent child for murdering Enrique Straughter, and the juvenile court found probable cause to believe that Taylor had been complicit in Straughter's murder. When the juvenile court transferred the case to adult court and the grand jury indicted Taylor for aggravated murder, murder, and felony murder, the adult court had jurisdiction to convict Taylor of each of those offenses. That the juvenile complaint did not allege that Taylor was a delinquent child for committing felony murder is of no import, because former R.C. 2151.23(H) permitted the adult court to convict him of offenses that were different from those specifically charged in the complaint.

{¶ 56} Consequently, the court of appeals erred in holding that the adult court lacked jurisdiction to convict Taylor of committing felony murder.

### IV. Conclusion

{¶ 57} Under the bindover statutes in effect prior to the amendments in 2022 Am.Sub.S.B. No. 288, when a juvenile's case was transferred from juvenile court for prosecution in adult court, the adult court had subject-matter jurisdiction to convict the juvenile of the offense that was the basis of the transfer of the case or of another offense that was different from the offense charged in the juvenile complaint. So, although the juvenile complaint in this case had charged Taylor with murder and the juvenile court had found probable cause to believe only that he had been complicit in a murder, the trial court had jurisdiction to convict Taylor of felony murder.

**{¶ 58}** Further, as explained in Part II(B) of the lead opinion, the state did not violate Taylor's Sixth Amendment right to counsel when it interviewed him on December 12, 2016, in the absence of his attorney.

**{¶ 59}** For these reasons, while I join Part II(B) of the lead opinion, I otherwise concur only in the court's judgment reversing the judgment of the Tenth District Court of Appeals and remanding this matter to that court for it to review those assignments of error that it did not consider in the first instance.

DEWINE and DETERS, JJ., concur in the foregoing opinion.

_____

**FISCHER, J., concurring in part and concurring in judgment.**

**{¶ 60}** I concur in this court's judgment reversing the judgment of the Tenth District Court of Appeals. I write separately to briefly outline my position regarding *State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d 297, and *State v. Burns*, 170 Ohio St.3d 57, 2022-Ohio-4606, 208 N.E.3d 801.

**{¶ 61}** First, I concur fully and unequivocally in the portions of the lead opinion analyzing and disposing of appellee Damon L. Taylor's Sixth Amendment and due-process arguments regarding the right to counsel. Therefore, I join Part II(B) of the lead opinion.

**{¶ 62}** Second, I agree with some of the points the lead opinion makes in relation to the adult court's jurisdiction over the felony-murder charge that Tayor was convicted of. As the lead opinion acknowledges, the statutes providing for discretionary and mandatory bindovers to adult court were recently amended by the General Assembly, effective in April 2023. *See* lead opinion, ¶ 18, citing 2022 Am.Sub.S.B. No. 288. The bindover in this case predated those amendments, so those amendments do not and cannot affect Taylor's bindover. I agree that the existence of those amendments underscores the notion that it is not prudent for us to revisit our decisions in *Smith* and *Burns*.

**{¶ 63}** I unequivocally joined the separate opinions in *Smith* and *Burns*. *See Smith* at ¶ 92 (Kennedy, J., dissenting); *Burns* at ¶ 77 (Kennedy, J., concurring in part and dissenting in part). At those times—*Smith* was decided in February 2022, and *Burns* was decided in December 2022—I agreed with the analysis set forth in those separate opinions. And I still believe that those separate opinions best applied the text of the relevant statutory provisions in the context of those cases.

**{¶ 64}** However, the General Assembly has spoken definitively about how bindover cases from April 2023 forward are to be handled. Any further statements of law we make regarding pre-April 2023 bindover proceedings will apply to a shrinking number of cases. Overruling *Smith* and *Burns* at this late date could have multiple consequences—some foreseeable and perhaps some unforeseeable—and will effectively set up an unnecessary competing set of approaches to pre- and post-April 2023 bindovers. While I fully agreed with the approach set forth in the separate opinions in *Smith* and *Burns*, the relationship between the majority opinion's approach in *Smith* and the post-*Smith* amendments to the relevant bindover statutes raise doubts in my mind as to whether it is necessary for us to overrule those decisions at this time.

**{¶ 65}** Additionally, the parties in this case have not advocated for *Smith* or *Burns* to be overruled. *See State v. Gwynne*, 173 Ohio St.3d 525, 2023-Ohio-3851, ___ N.E.3d ___, ¶ 34 ("We should not be addressing issues that were not presented in the proposition of law"), citing *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 48 (Fischer, J., concurring in judgment only). And I otherwise remain unconvinced that in light of the statutory amendments, the high standard for overruling previous decisions of this court has been met with regard to *Smith* and *Burns*. Thus, after careful consideration, I conclude that the most prudent approach is to let *Smith* and *Burns* stand.

**{¶ 66}** For these reasons, I respectfully concur in the judgment reversing the judgment of the Tenth District Court of Appeals and remanding the matter to that court for review of Taylor's remaining assignments of error.

_____

G. Gary Tyack, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellant.

Carpenter Lipps, L.L.P., and Kort Gatterdam; and Timothy Young, Ohio Public Defender, and Lauren Hammersmith and Timothy B. Hackett, Assistant Public Defenders, for appellee.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Gregory Ochocki, Assistant Prosecuting Attorneys, urging reversal for amicus curiae Cuyahoga County Prosecutor's Office.

_____