[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Turner*, Slip Opinion No. 2026-Ohio-1996.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1996

THE STATE OF OHIO, APPELLANT, *v.* TURNER, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Turner*, Slip Opinion No. 2026-Ohio-1996.]

*Criminal law—Juvenile law—When a juvenile court transfers a case to the adult court under mandatory- or discretionary-bindover procedures, it transfers the entire case, including all acts charged in the juvenile complaint; the juvenile court's jurisdiction over the case abates; and the adult court has jurisdiction over the case as though it had been initiated in that court, extending not only to offenses charged in the juvenile complaint but to any offense for which the grand jury issues an indictment—State v. Smith overruled—Court of appeals' judgment reversed, convictions reinstated, and cause remanded to court of appeals for consideration of previously unaddressed assignments of error.*

(No. 2024-1242—Submitted June 3, 2025—Decided June 3, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 111808, 2023-Ohio-2874.

_____

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, HAWKINS, and SHANAHAN, JJ., joined. FISCHER, J., dissented, with an opinion. BRUNNER, J., dissented, with an opinion.

**DETERS, J.**

{¶ 1} The juvenile division of the common pleas courts has exclusive jurisdiction over cases in which a juvenile is alleged to have committed an offense that would be a crime if committed by an adult. But under certain circumstances, upon finding probable cause to believe that the juvenile committed a serious offense, the juvenile court is required to transfer jurisdiction of the case to the adult court. The adult court then treats the case as though it had started in adult court. This appeal asks whether a person initially charged in juvenile court can be convicted in adult court of offenses for which the juvenile court found there was no probable cause or offenses that were not charged in the juvenile complaint.

{¶ 2} Tavonte Turner was charged with five offenses related to the death of Joseph Owens. The Juvenile Division of the Cuyahoga County Court of Common Pleas found probable cause to believe that Turner had committed aggravated murder and other offenses, but it determined that there was no probable cause to believe that Turner had had a weapon while under a disability. The juvenile court transferred the case to the adult court. There, Turner pleaded guilty to murder (an offense for which the juvenile court had found probable cause), having a weapon while under a disability (an offense for which the juvenile court had determined that there was no probable cause), and attempted murder (an offense that had not been charged in the juvenile complaint).

{¶ 3} Turner appealed to the Eighth District Court of Appeals, which reversed his convictions for attempted murder and having a weapon while under a disability. 2023-Ohio-2874, ¶ 1 (8th Dist.). In doing so, the court of appeals relied

on this court's decisions in *State v. Smith*, 2022-Ohio-274, and *State v. Burns*, 2022-Ohio-4606. In *Smith*, this court held that when a case is transferred from juvenile court to adult court, the adult court has jurisdiction over only the offenses for which probable cause was found in the juvenile court or the offenses that are rooted in the offenses that were charged in the juvenile complaint. *Smith* at ¶ 44. For the reasons explained below, we conclude that *Smith* was wrongly decided by this court. We therefore overrule *Smith*, and to the extent that this court applied its holding in *Smith* to its decision in *Burns*, we overrule it as well. We accordingly reverse the judgment of the Eighth District and reinstate Turner's convictions for attempted murder and having a weapon while under a disability.

## I. BACKGROUND

### A. *The Juvenile-Court Proceedings*

{¶ 4} In September 2020, a person later identified as Turner shot and killed Joseph Owens. Turner was charged in the Juvenile Division of the Cuyahoga County Common Pleas Court with five counts: aggravated murder with two firearm specifications, murder with two firearm specifications, felonious assault with two firearm specifications, having a weapon while under a disability, and improperly handling a firearm in a motor vehicle. Because Turner was 16 years old when the charged offenses were committed, he was subject to mandatory bindover to the adult court if the juvenile court found that there was probable cause to believe that Turner had committed the offenses. *See* R.C. 2152.12(A)(1)(a)(i).

{¶ 5} The juvenile-court judge conducted a probable-cause hearing, during which the State called several witnesses and played residential-security-camera video of the shooting. At the conclusion of the hearing, the judge found that there was probable cause to believe that Turner had committed aggravated murder, murder, felonious assault, and improper handling of a firearm in a motor vehicle and that Turner had had a firearm and displayed, brandished, or used it to facilitate those offenses. However, the judge determined that no evidence had been

presented to support a probable-cause finding regarding the having-a-weapon-while-under-a-disability count. The judge ordered that the matter be transferred to the adult court.

### B. The Adult-Court Proceedings

{¶ 6} After the case was transferred to the adult court, the grand jury indicted Turner on the same five counts with which he had been charged in the juvenile court, plus seven other counts:[1]

| Count | Offense | Charged in the juvenile complaint? |
|-------|---------|-----------------------------------|
| No. 1 | Aggravated murder, in violation of R.C. 2903.01(A), with two firearm specifications | Yes |
| No. 2 | Murder, in violation of R.C. 2903.02(B), with two firearm specifications | Yes |
| No. 3 | Felonious assault, in violation of R.C. 2903.11(A)(1), with two firearm specifications | Yes |
| No. 4 | Discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3), with two firearm specifications | No |

---

1. Turner was indicted with three codefendants. The counts listed here are for the offenses with which Turner was charged.

| No. 5 | Attempted murder, in violation of R.C. 2923.02/2903.02(A), with two firearm specifications | No |
|---|---|---|
| No. 6 | Felonious assault, in violation of R.C. 2903.11(A)(2), with two firearm specifications | No |
| No. 7 | Discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3), with two firearm specifications | No |
| No. 10 | Improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B) | Yes |
| No. 12 | Having a weapon while under a disability, in violation of R.C. 2923.13(A)(2) | Yes |
| No. 13 | Having a weapon while under a disability, in violation of R.C. 2923.13(A)(1) | No |
| No. 14 | Having a weapon while under a disability, in violation of R.C. 2923.13(A)(2) | No |
| No. 15 | Improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B) | No |

{¶ 7} Count Nos. 5 and 6 (attempted murder and felonious assault) were related to a second victim that Turner was seen firing at on the residential-security-camera video.

{¶ 8} Turner pleaded guilty to Count No. 2 (murder) with a three-year firearm specification, Count No. 5 (attempted murder) with no firearm specification, and Count No. 12 (having a weapon while under a disability). The remaining counts were dismissed by the State. The trial court sentenced Turner as follows: for Count No. 2—25 years to life in prison, with a 3-year term for the firearm specification to be served prior to and consecutively to the base-charge sentence; for Count No. 5—7 years in prison to be served consecutively to the sentence for Count No. 2; and for Count No. 12—36 months in prison to be served concurrently with the other sentences.

### C. The Court-of-Appeals Proceedings

{¶ 9} Turner appealed his convictions to the Eighth District. In addition to challenging various aspects of the sentences imposed by the trial court, Turner asserted that the trial court lacked subject-matter jurisdiction to convict him of attempted murder and having a weapon while under a disability because the juvenile court had not found probable cause to believe that he had committed either offense. The court of appeals concluded that the trial court erred when it sentenced Turner to 25 years to life on Count No. 2, 2023-Ohio-2874 at ¶ 3, 7-8 (8th Dist.), and, relevant here, that the trial court did not have jurisdiction to convict Turner of attempted murder and having a weapon while under a disability, *id.* at ¶ 13, 22, thus rendering three of Turner's assignments of error regarding the sentences imposed for Count Nos. 5 and 12 moot, *id.* at ¶ 6.

{¶ 10} The Eighth District's conclusions regarding the adult court's subject-matter jurisdiction were largely grounded in this court's decisions in *Smith*, 2022-Ohio-274, and *Burns*, 2022-Ohio-4606, which applied *Smith*'s reasoning. First, regarding the having-a-weapon-while-under-a-disability count, the court of appeals pointed to this court's holding in *Smith* that "'[i]n the absence of a juvenile court's finding probable cause or making a finding that the child is unamenable to care or rehabilitation within the juvenile system, no adult court has jurisdiction over

6

acts that were charged in but not bound over by the juvenile court.'" 2023-Ohio-2874 at ¶ 10 (8th Dist.), quoting *Smith* at ¶ 44. The Eighth District reasoned that because the juvenile court had determined that there was not probable cause to believe that Turner had committed the having-a-weapon-while-under-a disability offense, the adult court did not have jurisdiction over that offense. *Id.* at ¶ 12-13.

{¶ 11} Turning to the attempted-murder count, the court of appeals pointed to this court's discussion in *Burns* of acts that were not the subject of a juvenile complaint. In *Burns*, this court stated that "a case transferred from a juvenile court may result in new indicted charges in the adult court when the new charges are rooted in the acts that were the subject of the juvenile complaint but were not specifically named in the individual acts transferred." *Burns* at ¶ 13. Applying this language to Turner's appeal, the Eighth District concluded that the attempted-murder offense, even though it occurred at the same time as the murder, was distinct from the murder and thus not "'rooted in the acts'" that were the subject of the juvenile complaint. 2023-Ohio-2874 at ¶ 21-22 (8th Dist.). The court of appeals therefore vacated Turner's convictions for attempted murder and having a weapon while under a disability. *Id.* at ¶ 13, 22, 25.

{¶ 12} We accepted the State's appeal on three propositions of law:

[1.] The jurisdiction referenced in R.C. 2151.23(H) implicates jurisdiction over the case, not subject-matter jurisdiction.

[2.] In juvenile bindover cases, guilty pleas in criminal court waive claims arising out of the underlying bindover hearing because a grand jury determination superseded the juvenile court's probable cause finding.

[3.] The General Division had jurisdiction over the case after it was transferred by the Juvenile Division to "hear and determine" the case as if the case had originated in the adult court under

R.C. 2151.23(H) which included the authority to accept a plea or verdict for the offense that was the basis of transfer, for an offense of [the] same or lesser degree than that charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged.

*See* 2023-Ohio-4640.

## II. ANALYSIS

### A. Turner's Case Is Easily Resolved under the Juvenile Statutory Scheme

{¶ 13} Juvenile courts have jurisdiction over a child who is alleged to be delinquent. R.C. 2151.23. In certain situations, a juvenile may be subject to discretionary or mandatory bindover to the adult common pleas court. *See* R.C. 2152.12(A) and (B).

{¶ 14} We turn our attention to mandatory bindover, which is the relevant procedure here for transferring a juvenile-court case to the adult court:

After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder . . . if committed by an adult, the juvenile court at a hearing shall transfer the case if . . . [t]he child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged.

R.C. 2152.12(A)(1)(a)(i).

{¶ 15} Once the juvenile court has transferred the case, "[t]he transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall

be within the jurisdiction of the court to which it is transferred as described in [R.C. 2151.23(H)]." R.C. 2152.12(I).[2]

{¶ 16} How the case proceeds after transfer to the adult court is addressed in R.C. 2151.23(H):

> The court to which the case is transferred for criminal prosecution pursuant to [R.C. 2152.12] has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court, . . . including, but not limited to, jurisdiction to accept a plea of guilty or another plea authorized by Criminal Rule 11 or another section of the Revised Code and jurisdiction to accept a verdict and to enter a judgment of conviction pursuant to the Rules of Criminal Procedure against the child for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged.

{¶ 17} Applying the plain language of the relevant statutes, resolution of this case is straightforward. When Turner was 16 years old, he was charged with an act that would be aggravated murder if it had been committed by an adult. The juvenile court found that there was probable cause to believe that Turner had committed aggravated murder, so the juvenile court was required to transfer the case to the adult court. Once the case was transferred, the juvenile court's

---

2. R.C. 2152.12(I) was amended effective April 4, 2023, *see* 2022 Am.Sub.S.B. No. 288, but we apply the law that was in effect when the offenses were committed, *see* 2016 Sub.H.B. No. 158 (effective Oct. 12, 2016).

jurisdiction abated as to all the acts alleged in the juvenile complaint—that is, aggravated murder with two firearm specifications, murder with two firearm specifications, felonious assault with two firearm specifications, having a weapon while under a disability, and improperly handling a firearm in a motor vehicle.

{¶ 18} When the case was transferred to the adult court, the grand jury indicted Turner on the same five counts with which he had been charged in the juvenile court, along with seven other counts. After Turner's indictment, the adult court "hear[d] and determine[d] the case in the same manner as if the case originally had been commenced in that court," R.C. 2151.23(H), accepted Turner's guilty pleas, and sentenced him accordingly. The matter was resolved as prescribed by the statutory scheme.

{¶ 19} Given the plain language of the statutes, how did the Eighth District go astray in concluding that the adult court did not have jurisdiction over either the attempted-murder or the having-a-weapon-while-under-a-disability counts? The answer lies in this court's erroneous decision in *Smith*.

### B. This Court Got It Wrong in Smith

{¶ 20} In *Smith*, this court considered "[w]hat specifically transfers when a juvenile court exercises its discretion and binds over a juvenile . . . to an adult court pursuant to R.C. 2152.12." 2022-Ohio-274 at ¶ 24. Police charged Smith with eight offenses, but the juvenile court found probable cause to believe that Smith had committed only four of them. *Id.* at ¶ 9-11. After the case was transferred to the adult court, the grand jury indicted Smith for the eight offenses with which he had been charged in the juvenile court, plus an additional escape charge. *Id.* at ¶ 12. This court concluded that Smith could not be convicted in the adult court of the offenses for which the juvenile court had not found probable cause. *Id.* at ¶ 2. As discussed below, that conclusion was divorced from the language of the statutory scheme and resulted from several missteps by the court.

10

**{¶ 21}** First, the court in *Smith* reasoned that because "act" is defined in the statutory scheme and "case" is not, *id.* at ¶ 27-28, the word "act" should be accorded a greater "consequential . . . meaning," *id.* at ¶ 29. The weakness of that logic is readily apparent. Many statutes contain words that are not statutorily defined, yet we accord them the same importance as those words that are statutorily defined. For example, R.C. 2903.01(A) provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." "Purposely," as used in R.C. 2903.01, is statutorily defined, *see* R.C. 2901.22(A), but "death" is not. Yet no one would accord "death" a less consequential meaning than "purposely" when interpreting the statute.

**{¶ 22}** Building on its faulty premise that the use of "act" in R.C. 2152.12 is more important than the use of "case," the court in *Smith* reasoned that despite the statutory scheme's reference to the "transfer of the case," not all the acts charged in a juvenile complaint transfer to the adult court after determinations of probable cause and amenability have been made. *Smith* at ¶ 28. Instead, this court held that only certain acts—those for which probable cause was found—transfer. *Id.* at ¶ 29. But as explained by the dissent in *Smith*, "case" has been treated as synonymous with "action," *id.* at ¶ 61 (Kennedy, J., dissenting), and "'"action" has typically been understood to refer to the entire legal proceeding, regardless of how many claims or charges are included in the proceeding,'" *id.* at ¶ 62, quoting *State v. Craig*, 2020-Ohio-455, ¶ 13. In light of the commonly understood meaning of "case," the General Assembly's reference in R.C. 2152.12(I) and 2153.23 to the transfer of the *case* clearly means that the entire case—i.e., all the acts charged in the juvenile complaint—transfers to the adult court.[3]

---

3. In April 2023, the General Assembly enacted R.C. 2152.022, which, in the context of a case being transferred from juvenile court to adult court, defines "case" as "all charges that are included in the complaint or complaints containing the allegation that is the basis of the transfer under [R.C. 2152.12(A)(1) or (B)] and for which the court found probable cause to believe that the child committed the act charged, regardless of whether the complaint or complaints are filed under the

{¶ 23} In addition to incorrectly splitting off different acts from the case that was transferred from the juvenile court to the adult court, the court in *Smith* endeavored to explain the adult court's jurisdiction with respect to counts for offenses that had not been charged in the juvenile complaint. Undeterred by R.C. 2151.23(H)'s unequivocal statement that upon transfer of a case from the juvenile court, the adult court has jurisdiction to enter a conviction "for the commission of another offense that is different from the offense charged," the court in *Smith* explained that the adult court's jurisdiction extended only to "an offense different from the offense charged that was *rooted in* the offense that was the basis of the transfer" (emphasis added), 2022-Ohio-274 at ¶ 35. The judicial lawmaking exercised by the court in *Smith* ignores that once a case is transferred from the juvenile court to the adult court, the adult court has jurisdiction to "hear and determine the case in the same manner as if the case originally had been commenced in that court," R.C. 2151.23(H), and that jurisdiction extends to all charges indicted by the grand jury.

{¶ 24} Lest one conclude that an act charged in a juvenile complaint for which a person is later indicted by the grand jury in the adult court would satisfy the newly created "rooted in" requirement, the *Smith* court dispelled that notion by announcing that a charge for which probable cause had not been found by the juvenile court "[had] effectively been dismissed," *Smith* at ¶ 36. Presumably, under the *Smith* court's reasoning, the "dismissal" was with prejudice so that the person could not be later convicted of the offense. The problem with that logic was laid bare by the dissent in *Smith*: "A no-probable-cause finding cannot result in the dismissal of the acts charged, because . . . a dismissal can occur only after an adjudication. The probable-cause hearing is not an adjudicatory hearing; it is patently something else" (citation omitted), *id.* at ¶ 86 (Kennedy, J., dissenting).

---

same case number or different case numbers." S*ee* 2022 Am.Sub.S.B. No. 288. But we apply the law that was in effect when the offenses were committed. *See* footnote 2.

{¶ 25} Compounding the problems with its understanding of the statutory scheme, the court in *Smith* determined that the adult court lacked subject-matter jurisdiction over an act that was transferred from the juvenile court without a probable-cause determination. *See id.* at ¶ 42. Thus, in the eyes of the court in *Smith*, the adult court's judgment with respect to such an act was void ab initio. While the court in *Smith* was correct that a decision made by a trial court without subject-matter jurisdiction is void, *see State v. Harper*, 2020-Ohio-2913, ¶ 23, it misapprehended when a court's subject-matter jurisdiction is implicated.

{¶ 26} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *Id.* at ¶ 23. The Ohio Constitution provides the General Assembly with the power to determine the subject-matter jurisdiction of the common pleas courts and its divisions. *See* Ohio Const., art. IV, § 4(B). With respect to juvenile matters, the General Assembly has given juvenile courts exclusive subject-matter jurisdiction over juveniles who are alleged to be delinquent for committing offenses that would be crimes if committed by adults. *See* R.C. 2151.23. The General Assembly has further established that a juvenile court may or must relinquish its exclusive jurisdiction when certain conditions are met. *See* R.C. 2152.12(A) and (B). Thus, contrary to the court's conclusion in *Smith*, 2022-Ohio-274, the question is not whether the adult court has jurisdiction over a specific act. Instead, the question is whether the adult court has jurisdiction over the type of case transferred. And as explained by the justice concurring in part and dissenting in part in *Burns*, "[i]t is . . . within the subject-matter jurisdiction of a juvenile court to transfer a case, and it is within the subject-matter jurisdiction of the adult court to hear the case," 2022-Ohio-4606 at ¶ 67 (Kennedy, J., concurring in part and dissenting in part).

{¶ 27} Because this court's holding in *Smith* was untethered from the unambiguous statutory language in effect at the time Turner committed his offenses, we overrule it. And to the extent that this court applied its holding in

*Smith* to its decision in *Burns*, we overrule it as well. We hold that under the version of R.C. 2152.12(I) in effect at the time Turner committed his offenses, when a juvenile court transfers a case to the adult court—whether under mandatory- or discretionary-bindover procedures—it transfers the entire case, including all the acts charged in the juvenile complaint. The juvenile court's jurisdiction over the case abates, and the adult court has jurisdiction as though the case had been initiated there. The adult court's jurisdiction extends not only to offenses charged in the juvenile complaint but also to any offense for which the grand jury issues an indictment.

### C. The Adult Court Had Jurisdiction to Convict Turner of Attempted Murder and Having a Weapon While under a Disability

{¶ 28} Here, once the juvenile court found probable cause to believe that Turner had committed aggravated murder, it was required to transfer the case to the adult court. Following the transfer, the adult court had jurisdiction over all the counts for which the grand jury issued an indictment against him, including the jurisdiction to accept Turner's guilty pleas to the charges of attempted murder and having a weapon while under a disability.

### D. The Dissenting Opinions Miss the Mark

{¶ 29} The first dissenting opinion decries our decision to overturn *Smith* and *Burns.* It is largely grounded on three arguments, none of which withstand scrutiny. First, it protests that we "violate[]" stare decisis by overturning *Smith*, 2022-Ohio-274. Dissenting opinion of Fischer, J., ¶ 41, 42. But "'stare decisis isn't supposed to be the art of methodically ignoring what everyone knows to be true.'" *State v. Williams*, 2024-Ohio-1433, ¶ 27 (Kennedy, C.J., concurring in judgment only), quoting *Ramos v. Louisiana*, 590 U.S. 83, 105 (2020). And here, what the first dissenting opinion knows to be true is that *Smith* was wrongly decided. *See Smith*, 2022-Ohio-274, at ¶ 45 (Kennedy, J., dissenting, joined by Fischer, J.). "[W]hen a court adheres to an act of statutory misinterpretation by

applying stare decisis, the court 'perpetuates a usurpation of the legislative power.'" *Williams* at ¶ 28 (Kennedy, C.J., concurring in judgment only), quoting *Gamble v. United States*, 587 U.S. 678, 718 (2019) (Thomas, J., concurring).

{¶ 30} As explained above, this court in *Smith* overstepped the bounds of judicial power: it employed dubious logic to give the word "act" more significance than the word "case" and grafted the phrase "rooted in" onto R.C. 2151.23(H).[4] More troublingly, the court in *Smith* took from the General Assembly the power to establish the subject-matter jurisdiction of the common pleas courts. *See* Ohio Const., art IV, § 4 (B). The first dissenting opinion would have us perpetuate *Smith*'s usurpation of the General Assembly's power in the name of stare decisis.

{¶ 31} Second, the first dissenting opinion frets about the effect that this court's overturning *Smith* will have on defendants who have appeals pending. *See* dissenting opinion of Fischer, J., at ¶ 45-46. But continuing to apply this court's holding in *Smith* would not provide those defendants with any certainty in the outcome of their appeals. The cases that we have decided since *Smith—Burns*, 2022-Ohio-4606, *Williams*, *Taylor*, 2024-Ohio-1752, and *Macklin*, 2024-Ohio-2687—illustrate the difficulty the courts of appeals have faced in attempting to apply our judge-made law. A return to the plain language of the statute provides more certainty, not less.

---

4. The first dissenting opinion attempts to justify the judicially concocted "rooted in" language by a creative reading of R.C. 2151.23(H). It reasons that the statute's phrase "whether the conviction is for the same degree or a lesser degree of the offense charged" applies to the subsequent phrases "for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged." *See* dissenting opinion of Fischer, J., at ¶ 61. But when read under proper grammar rules, it is clear that the phrase beginning with "whether" applies only to the phrase immediately preceding it: "for the commission of the offense that was the basis of the transfer of the case for criminal prosecution." Thus, the adult court has jurisdiction to enter a judgment of conviction (1) "for the commission of the offense that was the basis of the transfer of the case for criminal conviction, whether the conviction is for the same degree or a lesser degree of the offense charged," (2) "for the commission of a lesser-included offense," or (3) "for the commission of another offense that is different from the offense charged," R.C. 2151.23(H).

{¶ 32} Third, the first dissenting opinion points to the enactment of R.C. 2152.022, which seemingly adopts the definition of "case" that this court used in *Smith*, 2022-Ohio-274. *See* dissenting opinion of Fischer, J., at ¶ 44. But again, we are applying the law that was in effect at the time of Turner's offenses (*see* footnote 2). And even if we were to apply the newly enacted law, the result here would not change. Defining "case" as including only those acts for which probable cause was found by the juvenile court affects only what is transferred from the juvenile court to the adult court. Left unchanged by the General Assembly was that R.C. 2151.23(H) gives the adult court jurisdiction to accept a verdict and enter a conviction "for the commission of another offense that is different from the offense charged." Overturning *Smith* returns the power to determine the subject-matter jurisdiction of the common pleas court to where it belongs—the General Assembly. The April 2023 amendments to the juvenile-bindover statutes do not change that jurisdiction.

{¶ 33} The second dissenting opinion bears a brief mention. It suggests that we are "executing a vendetta," dissenting opinion of Brunner, J., ¶ 71, and questions our humility, *see id.* at ¶ 71. Setting aside the vitriol, the second dissenting opinion largely boils down to two points: that we refuse to accept the court's decision in *Smith*, *see* dissenting opinion of Brunner, J., at ¶ 70, and that we are ignoring the will of the legislature, *see id.* at ¶ 71. As to the former point, we agree. We refuse to accept a decision so untethered to the statutory scheme. And regarding the latter point, the second dissenting opinion ignores that, as discussed above, the amendments to the statutory scheme did not remove the adult court's jurisdiction over "another offense that is different from the offense charged," R.C. 2151.23(H). Notably, the General Assembly did not deign to add to the statute the judicially concocted "rooted in" language that the court in *Smith* and *Burns* used.

{¶ 34} The juvenile courts' function is to determine whether the statutory conditions for adult prosecution have been satisfied—most critically, whether probable cause that the child committed a qualifying offense exists and whether transfer of the case to the adult court is either permitted or required. Once that determination is made and jurisdiction is relinquished by the juvenile court, the case proceeds in the adult court under the ordinary rules governing criminal prosecutions. The statutory scheme does not require the juvenile court to anticipate every possible charge that may arise from the same criminal episode, nor does it convert the bindover hearing into a substitute for indictment. The approach created by this court's decision in *Smith*—to which the dissenting opinions would cling— did just that. By welding adult prosecution to the precise wording of a juvenile complaint, *Smith* transformed a threshold jurisdictional inquiry into a supervisory mechanism that could encourage overcharging: if the juvenile complaint controlled all future prosecution, it would make sense to include more charges. The result would be duplicative proceedings whenever additional offenses arising from the same conduct come to light or whenever evidentiary development supports an enhanced charge. Nothing in the statutory text suggests that the General Assembly intended such inefficiency.

{¶ 35} Nor does today's holding diminish constitutional safeguards for any child charged in a juvenile court who is subject to transfer for prosecution in the adult court. Any charge pursued in adult court remains subject to indictment, notice, proof beyond reasonable doubt, and all attendant protections of due process. The juvenile offender receives the protection that the statutory scheme promises: a judicial determination that transfer to the adult court is authorized. What the scheme does not promise—and what we decline to create—is a charge-by-charge veto power residing indefinitely in the juvenile court.

{¶ 36} By conflating jurisdictional transfer with charge-specific certification, the precedent championed by the dissenting opinions enlarged the

statutory protection beyond its design and invited procedural gamesmanship dependent on the drafting of an initial juvenile complaint. Our decision restores the scheme that the General Assembly enacted: a defined relinquishment of jurisdiction followed by prosecution under adult criminal procedure. That restoration promotes coherence and finality while keeping constitutional safeguards for juvenile offenders in place.

{¶ 37} Finally, a note of clarification about *Burns*. The first dissenting opinion questions the effect of our overturning *Burns* to the extent that *Burns* applied this court's holding in *Smith*. *See* dissenting opinion of Fischer, J., at ¶ 50. We mean just what we say: to the extent *Burns* relied on *Smith* to graft the "rooted in" language onto R.C. 2151.23(H), we overturn it. It is not the role of the judiciary to write legislation.

### III. CONCLUSION

{¶ 38} For the reasons explained above, we overrule *State v. Smith*, 2022-Ohio-274, and to the extent that this court applied its holding in *Smith* to its decision in *State v. Burns*, 2022-Ohio-4606, we overrule it as well. By the unambiguous terms of the statutory scheme, the adult court had jurisdiction to convict Turner of attempted murder and having a weapon while under a disability, in addition to murder. Given our resolution of the first and third propositions of law, we need not consider whether Turner waived his right to challenge the adult court's jurisdiction over his case by entering guilty pleas in that court. We accordingly reverse the judgment of the Eighth District Court of Appeals, reinstate Turner's convictions, and remand this matter to the Eighth District for consideration of Turner's remaining assignments of error.

Judgment reversed,
convictions reinstated,
and cause remanded.

_____

**FISCHER, J., dissenting.**

{¶ 39} I am profoundly disappointed in the majority today. Instead of following the law as repeatedly interpreted by this court and confirmed by the General Assembly, the majority uses this case as an opportunity to impose its will on Ohio law and overturn *State v. Smith*, a case that this court has previously refused to overturn four separate times. *Compare Smith*, 2022-Ohio-274, *with State v. Burns*, 2022-Ohio-4606, *State v. Williams*, 2024-Ohio-1433, *State v. Taylor*, 2024-Ohio-1752, and *State v. Macklin*, 2024-Ohio-2687. Even worse, the majority overturns *Burns* in its entirety, including a holding that every justice of this court agreed on at the time and that no one asked this court to overturn. Thus, I must dissent.

### I. The majority opinion lights a match by overturning *Smith*

{¶ 40} In *Smith*, this court was tasked with determining what is transferred from the juvenile court to the adult court under R.C. 2152.12, one of the juvenile-bindover statutes. *Smith* at ¶ 24-25; *see also Williams* at ¶ 13 (summarizing this court's decision in *Smith*). Both the majority and the dissenting opinions in that case used statutory interpretation to analyze the issue. *See Smith* at ¶ 27-43; *id.* at ¶ 47-72 (Kennedy, J., dissenting). In *Smith*, this court held that "a juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found." *Id.* at ¶ 29. The dissenting opinion, which I joined, asserted that "the case" as that term is used in the statute meant "the filed complaint and all the acts charged in it." *Id.* at ¶ 64 (Kennedy, J., dissenting). Therefore, the dissenting opinion would have held that after a proper bindover, the entire case transfers to the adult court, not just those offenses for which probable cause was found by the juvenile court.

{¶ 41} Nevertheless, the majority opinion in *Smith* won the day, and that opinion was upheld by this court four separate times. *See Burns*; *Williams*; *Taylor*; *Macklin*. Overturning *Smith* at this late date is unwise because doing so violates

stare decisis and works an injustice. Furthermore, the General Assembly has since amended the juvenile-bindover statutes to codify this court's holding in *Smith*.

### A. Overturning Smith *violates stare decisis*

{¶ 42} Let's start with stare decisis. "*Stare decisis* is a cornerstone of our legal system . . . ." *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 518 (1989). It "compels a court to recognize and follow an established legal decision in subsequent cases in which the same question of law is at issue." *State v. Henderson*, 2020-Ohio-4784, ¶ 28. While "the doctrine of *stare decisis* is not an inexorable command, . . . fidelity to that precedent is fundamental to a society governed by the rule of law." (Cleaned up.) *Payne v. Tennessee*, 501 U.S. 808, 848 (1991) (Marshall, J., dissenting).

{¶ 43} Stare decisis can be applied with varying force, but we have described precedent that "involves statutory interpretation . . . as more sacrosanct than the common-law precedents." *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 6 (1989). "Precedent that involves statutory interpretation 'is owed greater stare decisis effect than other sources of law, because the legislature can always amend a statute in light of a court's construction.'" *Williams*, 2024-Ohio-1433, at ¶ 17, quoting *State v. Wilson*, 2022-Ohio-3202, ¶ 51 (DeWine, J., dissenting); *see also New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 2019-Ohio-2851, ¶ 19 (stare decisis applies to statutory interpretation because the legislature may amend a statute if it disagrees with the court's interpretation); *State v. Bodyke*, 2010-Ohio-2424, ¶ 33 (lead opinion), quoting *Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 23 ("'stare decisis applies to rulings rendered in regard to specific statutes'"). Because this court used statutory interpretation to reach its conclusion in *Smith*, 2022-Ohio-274, and affirmed its holding in *Smith* in no less than four other cases, *see Burns*, 2022-Ohio-4606; *Williams*; *Taylor*, 2024-Ohio-1752; *Macklin*, 2024-Ohio-2687, this court's precedent supports adhering to that decision when deciding later cases.

20

### B. The General Assembly has since codified Smith

{¶ 44} The majority opinion says that we should not apply stare decisis to preserve *Smith*, because "'adher[ing] to an act of statutory misinterpretation'" would be tantamount to "'"'perpetuat[ing] a usurpation of legislative power."'"' Majority opinion, ¶ 29, quoting *Williams* at ¶ 28 (Kennedy, C.J., concurring in judgment only), quoting *Gamble v. United States*, 587 U.S. 678, 718 (2019) (Thomas, J., concurring). But even if the majority in *Smith* improperly interpreted the statute at the time, the General Assembly has since blessed that interpretation. In 2022, the General Assembly created a new statutory provision, R.C. 2152.022, defining "case" as that term is used in the juvenile-bindover statutes as "all charges that are included in the complaint or complaints containing the allegation that is the basis of the transfer . . . and for which the court found probable cause to believe that the child committed the act charged." 2022 Am.Sub.S.B. No. 288 (effective Apr. 4, 2023). In other words, the General Assembly rejected the definition proposed by the dissenting opinion in *Smith* and codified the majority opinion. *See Williams* at ¶ 20. Thus, any justification asserted by the majority in this case to overturn *Smith* because that decision was incorrect and usurps legislative authority to decide the law is plainly not present here.

### C. Overturning Smith creates an injustice

{¶ 45} Any need to "correct" *Smith* shrinks by the hour. As I stated in my separate opinion in *Taylor*,

> the General Assembly has spoken definitively about how bindover cases from April 2023 forward are to be handled. Any further statements of law we make regarding pre-April 2023 bindover proceedings will apply to a shrinking number of cases. Overruling *Smith* and *Burns* at this late date could have multiple consequences—some foreseeable and perhaps some

> unforeseeable—and will effectively set up an unnecessary competing set of approaches to pre- and post-April 2023 bindovers. While I fully agreed with the approach set forth in the separate opinions in *Smith* and *Burns*, the relationship between the majority opinion's approach in *Smith* and the post-*Smith* amendments to the relevant bindover statutes raise doubts in my mind as to whether it is necessary for us to overrule those decisions at this time.

*Taylor* at ¶ 64 (Fischer, J., concurring in part and concurring in judgment). And since the issuance of my separate opinion in *Taylor*, more than two years have passed, ensuring that the court's judgment in this case will affect even fewer cases. This outcome is profoundly unfair for the few juvenile defendants who will be affected by the court's judgment in this case simply because their cases are still in the appeals process compared to those defendants whose appeals were finalized between when *Smith* was decided in February 2022 and now.

{¶ 46} The majority opinion dismisses this problem by stating that "[a] return to the plain language of [R.C. 2151.23(H)] provides more certainty, not less," majority opinion at ¶ 31. But I am concerned about the unfairness for the likely small number of juvenile defendants to whom the pre-April 2023 version of the statute applies but whose appeals have not yet been finalized. Juvenile defendants whose appeals have already been finalized under the pre-April 2023 version of the statute had the benefit of this court's holding in *Smith*, 2022-Ohio-274, meaning that any convictions for offenses that were unrelated to the offense that was transferred to the adult court or for which no probable cause was found had to be overturned. However, a relatively small number of juvenile defendants will be subject to a much harsher judicial scheme merely because they are unlucky enough to still have appeals pending under the pre-April 2023 version of the statute. Unlike their peers, those juvenile defendants may have their convictions affirmed for any

and all offenses, even those unrelated to the offense that was transferred to the adult court. I believe this is a serious miscarriage of justice.

{¶ 47} Beyond a sense of vindication, the majority opinion does not point to any new argument or rationale for overturning *Smith*. In this case, this court is presented with the same arguments that have been rejected in no less than four prior cases. The parties to this case present no new reason for this court to review this issue. And the majority's decision to overturn *Smith* based on the same old arguments shows a lack of respect for the role of stare decisis in our legal system.

## II. The majority opinion burns it all to the ground by overturning *Burns*

{¶ 48} I am also concerned with the majority's treatment of *Burns*, 2022-Ohio-4606. Appellant, the State of Ohio, does not ask this court to overturn *Burns* but instead argues that this court should apply *Burns* to reverse the judgment in this case because the rule announced in *Burns* "tracks with R.C. 2151.23(H)."

{¶ 49} In *Burns*, this court relied on *Smith*, 2022-Ohio-274, to hold that the adult court lacked jurisdiction over a charge for which the juvenile court found no probable cause. *Burns* at ¶ 10. This court also separately held that the adult court had jurisdiction over charges that were not brought in the juvenile court but were "rooted in the acts that were the subject of the juvenile complaint." *Id.* at ¶ 13. This holding was based not on *Smith* but on the language of the statute and the caselaw in effect prior to *Smith*. *See id.*, citing R.C. 2151.23(H) and *State v. Weaver*, 2019-Ohio-2477, ¶ 14 (6th Dist.). Furthermore, all the justices on this court when *Burns* was decided agreed on the "rooted in" limitation. Although the opinion concurring in part and dissenting in part used slightly different language—"arose from" instead of "rooted in"—the result was the same. *See id.* at ¶ 72 (Kennedy, J., concurring in part and dissenting in part) ("the adult court was free to proceed on any charges the grand jury returned in an indictment that arose from the acts alleged to have been committed in the juvenile complaint, because under the relevant statutes, 'the case' transfers to the adult court"). All the justices agreed that the charges that were

not brought in the juvenile court could nevertheless be heard by the adult court because they were "rooted in" or "arose from" the acts that were the subject of the juvenile complaint. *See id.* at ¶ 13; *id.* at ¶ 72 (Kennedy, J., concurring in part and dissenting in part).

{¶ 50} But today, the majority apparently overturns *Burns* in its entirety and holds as follows: "The adult court's jurisdiction extends not only to offenses charged in the juvenile complaint but also to any offense for which the grand jury issues an indictment," majority opinion at ¶ 27. I say the majority "apparently" overturns *Burns* in its entirety because the majority does so while professing that it overturns *Burns* only "to the extent that this court applied its holding in *Smith* to its decision in *Burns*," majority opinion at ¶ 3, and without admitting that it is overturning a rule of law that was approved by every justice on this court when *Burns* was decided.

{¶ 51} But that must be the import of the majority opinion, because the majority opinion summarily states that "[f]ollowing the transfer, the adult court had jurisdiction over all the counts for which the grand jury issued an indictment against [appellee, Tavonte Turner], including the jurisdiction to accept Turner's guilty plea[] to the charge[] of attempted murder," majority opinion at ¶ 28, a charge that was not brought before the juvenile court. The majority opinion engages in no analysis of whether that charge was rooted in or arose from the acts that were the subject of the juvenile complaint, because the majority says that once a case is transferred from the juvenile court to the adult court, the prosecution may bring any and all charges against the juvenile, even those that occurred on a different date, arose from a separate incident, and were committed against different victims. *See id.* at ¶ 23. But that interpretation of the bindover statutes is as absurd as it is unmoored from the statutory language.

### A. The "rooted in" requirement in **Burns** is supported by the statutory scheme

{¶ 52} As this court said in *Williams*,

[w]hile the "rooted in the acts that were the subject of the juvenile complaint" limitation from *Burns* is not found in the language of R.C. 2151.23(H), that limitation is supported by the bindover scheme as a whole. A person who was a juvenile when he committed a felony offense may be bound over to adult court for acts for which the juvenile court found probable cause, but that bindover does not establish that the juvenile may then be bound over for all future felony charges. *See State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 44-45. While a grand jury may return an indictment on any charges supported by the facts submitted to it, the grand jury is implicitly precluded from returning additional charges arising from a different course of conduct or an event that has not been properly bound over by the juvenile court. *See Burns*[, 2022-Ohio-4606,] at ¶ 13; *see also State v. Weaver*, 6th Dist. Lucas No. L-18-1078, 2019-Ohio-2477, 2019 WL 2564126, ¶ 14. Only charges that are rooted in events that were considered and bound over by the juvenile court are subject to being heard and determined by the adult court.

2024-Ohio-1433 at ¶ 19.

**B. The "rooted in" requirement in Burns *is supported by the statutory language***

{¶ 53} This common-sense understanding of the juvenile-bindover statutes is further supported by the statutory language. The majority reasons that once a juvenile is bound over to adult court, that court has jurisdiction under R.C. 2151.23(H) to "'hear and determine the case in the same manner as if the case originally had been commenced in that court,'" majority opinion at ¶ 16, quoting

R.C. 2151.23(H), and "enter a conviction 'for the commission of another offense that is different from the offense charged,'" *id.* at ¶ 23, quoting R.C. 2151.23(H). To the majority, this means that the adult court may enter a conviction for *any* other offense. *See id.* at ¶ 16. But there are two major problems with the majority's reading of the statute.

*1. The adult court obtains jurisdiction over "the case," which consists of all charges that are rooted in or arose from the acts that were the subject of the juvenile complaint*

{¶ 54} The first problem with the majority's reading of the statute is that R.C. 2151.23(H) grants the adult court jurisdiction to hear and determine only "the case" in the same manner as if it originally had been commenced in that court. R.C. 2151.23(H) ("The court to which the case is transferred for criminal prosecution . . . has jurisdiction subsequent to the transfer to hear and determine *the case* in the same manner as if the case originally had been commenced in that court . . . ." [Emphasis added.]). The statute does not grant the adult court jurisdiction to hear and determine "the charges" or "the allegations" against the juvenile in the same manner as if they had originally been commenced in that court.

{¶ 55} So what is "the case"? Surely "the case" is not any and all charges against the juvenile, even those that have absolutely nothing to do with the acts for which the juvenile was bound over. Rather, "the case" is all charges that are "rooted in [or arose from] the acts that were the subject of the juvenile complaint." *Burns*, 2022-Ohio-4606, at ¶ 13; *see also id.* at ¶ 72 (Kennedy, J., concurring in part and dissenting in part).

{¶ 56} And every justice on this court agreed on that definition of "the case" when *Burns* was decided. Even the opinion concurring in part and dissenting in part agreed to that definition of "the case," stating:

> Therefore, the grand jury was free to consider the case that

transferred from the juvenile court; that is, it could consider any of the delinquent acts allegedly committed by Burns that were included in the juvenile complaint. And the adult court was free to proceed on any charges the grand jury returned in an indictment that arose from the acts alleged to have been committed in the juvenile complaint, because under the relevant statutes, "the case" transfers to the adult court.

*See id.*

{¶ 57} Even more explicit is the dissenting opinion in *Smith*, which was joined by all the justices who joined the separate opinion in *Burns*, including some of the members of today's majority opinion. "Therefore, the case is the filed complaint and all the acts charged in it." *Smith*, 2022-Ohio-274, at ¶ 64 (Kennedy, J., dissenting). "R.C. 2151.23(H) plainly establishes that the adult court has jurisdiction to consider any charge arising out of the commission of the offense that led to the transfer." *Id.* at ¶ 79 (Kennedy, J., dissenting). "[I]n common parlance, a criminal 'case' means all the charges emanating from a series of related events." *Id.* at ¶ 62 (Kennedy, J., dissenting).

{¶ 58} Even the majority today acknowledges that "the case" is what transfers to the adult court, *see* majority opinion at ¶ 22, and the majority likewise defines "the case" as "all the acts charged in the juvenile complaint," *id.* at ¶ 27.

{¶ 59} R.C. 2151.23(H) grants the adult court jurisdiction to hear and determine *only* "the case" in the same manner as if it originally had been commenced in that court. But the majority today holds that the statute grants the adult court jurisdiction to enter convictions for offenses that occurred on a different date, arose from a separate incident, were committed against different victims, and were never charged in the juvenile complaint. *See id.* at ¶ 16. This is clearly wrong.

*2.  R.C. 2151.23(H) allows the adult court to enter a conviction only "for the commission of the offense that was the basis of the transfer"*

{¶ 60} The second problem with the majority's reading of the statute is that it ignores some important language in R.C. 2151.23(H), which says that the adult court has jurisdiction "to enter a judgment of conviction . . . *for the commission of the offense that was the basis of the transfer* of the case for criminal prosecution, *whether* the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged."  (Emphasis added.)  Each of these scenarios—conviction for an offense of the same or lesser degree, conviction for the commission of a lesser-included offense, or conviction for the commission of another offense that is different from the offense charged—follow the word "whether," which means they are subject to the preceding condition.  The preceding condition requires that the conviction be "for the commission of the offense that was the basis of the transfer of the case," R.C. 2151.23(H).

{¶ 61} The majority dismisses my argument as a "creative reading" of the statute, majority opinion at ¶ 30, fn. 4.   But contrary to the majority's misrepresentation, I am *not* arguing that "the statute's phrase 'whether the conviction is for the same degree or a lesser degree of the offense charged' applies to the subsequent phrases 'for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged,'" *id.* Rather, I agree with the majority regarding how to read the statute under proper grammar rules.  I agree that "it is clear that the phrase beginning with 'whether' applies only to the phrase immediately preceding it: 'for the commission of the offense that was the basis of the transfer of the case for criminal prosecution,'" *id.* In other words, the statute should be read as saying that the adult court may enter a conviction "for the commission of another offense that is different from the offense charged" as long as the conviction is "for the commission of the offense that was

28

the basis of the transfer of the case for criminal prosecution," R.C. 2151.23(H). This may seem like a contradiction, but even the majority admits that this is how the statute must be read when proper grammar rules are applied. *See* majority opinion at ¶ 30, fn. 4.

{¶ 62} So what does R.C. 2151.23(H) mean when it says that a juvenile may be convicted of "another offense that is *different* from the offense charged" while being convicted "for the commission of the offense that was the basis of the transfer of the case"? (Emphasis added.) It means that the juvenile may be convicted in the adult court of an offense that was *not* charged in the juvenile complaint but was rooted in or arose from the same acts that were the subject of the juvenile complaint.

{¶ 63} For example, in *Burns*, after the juvenile was bound over to the adult court, he was charged with the attempted murders of two people. *Burns*, 2022-Ohio-4606, at ¶ 13. While those specific charges were not brought in the juvenile complaint, Burns was charged in the juvenile complaint with other offenses related to his attack on those same two people. *Id.* Therefore, this court determined that Burns was properly charged in the adult court with attempted murder because those charges were "rooted in" or "arose from" the same acts that were the basis of the juvenile complaint. *See id.* This is what the statute means when it says the juvenile may be convicted in the adult court of "another offense that is different from the offense charged," R.C. 2151.23(H).

### C. It is the majority's approach that encourages gamesmanship

{¶ 64} The majority claims that leaving *Smith*, 2022-Ohio-274, and *Burns* intact would encourage overcharging because "duplicative proceedings" would be necessary "whenever additional offenses arising from the same conduct come to light or whenever evidentiary development supports an enhanced charge," majority opinion at ¶ 34. However, this is certainly untrue. Such subsequent charges would clearly be "rooted in the acts that were the subject of the juvenile complaint," *Burns* at ¶ 13, and would therefore be allowed under *Smith* and *Burns* without any

additional proceedings. *Smith* and *Burns* do not create an overcharging problem.

{¶ 65} But under the majority's approach, the exact opposite is true. Instead of overcharging juveniles, prosecutors will be encouraged to habitually *undercharge* them in juvenile court. The majority's approach would encourage prosecutors to bring the least serious charge for which they can seek the juvenile's bindover to the adult court (any felony), *see* R.C. 2152.12(B), and once the juvenile is bound over, to bring much more serious charges in the adult court, even if those charges are unrelated to the charge for which the juvenile was bound over. Under the majority's approach, the prosecutor could charge the juvenile in the juvenile court with theft and once the juvenile is bound over to the adult court, the prosecutor could bring charges for murder based on a completely separate incident against a separate victim. Contrary to the majority's claims, it is the majority's approach that would "invite[] procedural gamesmanship," majority opinion at ¶ 36.

### III. Conclusion

{¶ 66} There is a time for everything and a season for every activity in this world, but the time to overrule *Smith*, 2022-Ohio-274, has passed. While I joined the dissenting opinion in *Smith*, it is clear that the General Assembly has rejected that opinion's interpretation of the juvenile-bindover statutes. And while I agreed with the dissenting opinion's approach to juvenile bindover when *Smith* was decided, I wholeheartedly disagree with today's majority and the contempt that it shows for the rule of law in Ohio. I further strongly dissent from the majority's decision to overturn *Burns*, 2022-Ohio-4606, which established a common-sense rule of law that comports with the language of the bindover statute and was agreed upon by all the justices on this court at that time.

{¶ 67} Instead, I would dismiss this appeal as having been improvidently accepted because the Eighth District Court of Appeals applied *Smith* and *Burns* as decided by this court and the State does not raise any new legal issues for this court to decide on this particular issue. Therefore, I dissent.

**BRUNNER, J., dissenting.**

{¶ 68} I agree with the first dissenting opinion that this case should be dismissed as having been improvidently accepted. *See* dissenting opinion of Fischer, J., ¶ 67. The majority opinion reverses this court's holding in *State v. Smith*, 2022-Ohio-274, simply because it can. But this court has no power to alter the legislature's decision to codify key legal interpretations made by this court in *Smith*.

{¶ 69} It is the role of the General Assembly—not this court—to write the laws prescribing when a juvenile may be prosecuted as an adult. If we have made a mistake or caused confusion in interpreting the laws enacted by the General Assembly governing the juvenile-bindover process, it is the General Assembly's prerogative to rewrite the laws or enact new ones. If the General Assembly was less than clear in its drafting of statutes and we have clarified how those statutes are to be applied by the courts of this State, it is the prerogative of the General Assembly whether it agrees with and codifies that interpretation.

{¶ 70} Since we issued our opinion in *Smith*, factions of this court have been stubbornly pursuing its reversal. But the General Assembly shut down any debate over how to interpret key terms in the juvenile-bindover statutes a day before we decided *State v. Burns*, 2022-Ohio-4606, in which we reaffirmed our holding in *Smith*. On December 22, 2022, the General Assembly passed 2022 Am.Sub.S.B. No. 288 ("S.B. 288"), which, effective April 4, 2023, amended the juvenile-bindover laws to (1) *follow* this court's holding in *Smith* and (2) answer questions the General Assembly deemed unaddressed by this court in *Smith*. *See* Ohio Legislative Service Commission, *S.B. 288 Bill Analysis*, available at https://www.legislature.ohio.gov/download?key=19873&format=pdf (accessed Apr. 6, 2026) [https://perma.cc/6MFF-6FY6]. That action by the policy-setting branch of Ohio's government should have closed the book on whether this court in

*Smith* correctly interpreted the juvenile-bindover statutes. And there can be no dispute that as of April 4, 2023, the effective date of S.B. 288, the legislature instructed us that *Smith* is now the law.

{¶ 71} But for appellee, Tavante Turner, and perhaps a handful of other defendants still entangled in appeals concerning juvenile bindovers that occurred before the effective date of S.B. 288, the majority opinion refuses to humbly accept the outcome that the fundamental constitutional tenet of separation of powers demands. The majority opinion instead engages in results-oriented jurisprudence, creating the appearance of executing a vendetta of the minority of the court at the time *Smith* was decided. In so doing, the majority opinion takes unwarranted advantage of this opportunity to impose its own biases about the application of the State's juvenile-bindover statutes—which were rejected by a majority of this court multiple times, *see* dissenting opinion of Fischer, J., at ¶ 39, and ultimately rejected by lawmakers—on litigants who happen to be caught in the pre-S.B. 288 window.

{¶ 72} The majority opinion's arbitrary and unnecessary decision does not represent a fair administration of justice. Rather, it stands as contemptuous of fair process and as an abuse of the judiciary to satisfy a yearning for retribution instead of justice. The words of the majority opinion demean the work of this court and shake the confidence of the public in what we do. In short, the words of the majority opinion are shameful.

{¶ 73} I disagreed with this court's decision to accept appellant the State of Ohio's request for discretionary review of this case, *see* 2023-Ohio-4640. I continue to believe this case was improvidently accepted for review, and now, I call it out as wrongly decided.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Gregory Ochocki, Assistant Prosecuting Attorneys, for appellant.

Cullen Sweeney, Cuyahoga County Public Defender, and Rick L. Ferrara, Assistant Public Defender, for appellee.

————————————